## Ann Mellin v. Flood Brook Union School District, Department of Education, et al.

[790 A.2d 408]

No. 00-143

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed December 21, 2001

*Eileen M. Blackwood* of *Blackwood Associates, P.C.*, Burlington, for Plaintiff-Appellant.

*Christopher D. Roy* of *Downs Rachlin Martin PLLC*, Burlington, for Defendants-Appellees Flood Brook Union ˮ School District, Coleman, Harper, Henson, Smith, Frauman, Farrar and Wylie.

*William Sorrell*, Attorney General, and *Joseph L. Winn*, Assistant Attorney General, Montpelier, for Defendants-Appellees Pallas and Department of Education.

**Johnson, J.** Plaintiff Ann Mellin challenges the Bennington Superior Court's grant of summary judgment and judgment on the pleadings to defendants Flood Brook Union School District, Flood Brook Union School Board members in their individual and official capacities, the Vermont Department of Education ("DOE") and the DOE's licensing officer, Patricia Pallas, in her official and individual capacities. Plaintiff contends the trial court erred by dismissing her claims against the school defendants[1] for (1) disability discrimination in violation of Vermont's Fair Employment Practices Act ("VFEPA"), 21 V.S.A. § 495(a)(1); (2) retaliation for requesting accommodations for her disability and filing complaints under the Vermont Occupational Health and Safety Act, 21 V.S.A. § 231 and Vermont Workers' Compensation Act, 21 V.S.A. § 710; and (3) damages and equitable relief through the doctrines of laches, waiver and estoppel. She also contests the court's conclusion that the

---

[1] In this opinion we refer to the Flood Brook Union School District and the Flood Brook Union School Board members collectively as the "school defendants."

individual school board members were entitled to qualified immunity on all of her claims. As to the State defendants, plaintiff seeks reversal of the court's orders dismissing her claims for estoppel, violations of procedural and substantive due process under the Vermont and United States Constitutions and negligence. Finally, plaintiff appeals the court's denial of her request to amend her complaint to allege gross negligence against defendant Pallas. We reverse the trial court's order on plaintiff's retaliation claim and its conclusion that the school board members individually are entitled to qualified immunity, but affirm the remainder of the court's decisions.

This case arises out of two key events: plaintiff's March 1994 termination from her teaching position at Flood Brook Elementary School and the revocation of her license to teach elementary level students which DOE and defendant Pallas had erroneously issued and reissued to plaintiff over the course of several years. We set out the facts and history relevant to each claim separately because they are somewhat complex and so they may be understood in context.

I.

Plaintiff's complaint alleged that the school defendants discriminated against her on the basis of her disability, which consists of severe migraines and allergies triggered by various environmental conditions, by terminating her employment, not renewing her teaching contract, and refusing to accommodate her, actions all contrary to VFEPA. The trial court granted summary judgment to the school defendants on this claim, concluding that plaintiff failed to demonstrate a genuine issue of material fact existed regarding whether she was substantially impaired in a major life activity and could perform the essential functions of her teaching position. See 21 V.S.A. § 495d(5)(A) (a person with a physical or mental impairment which substantially limits one or more major life activities is disabled); id. § 495d(6) (individuals able to perform the essential functions of their jobs with accommodation are "qualified individual[s] with a disability"). We affirm because the parties are precluded by a prior arbitration award from relitigating whether a particular job requirement was an essential function of plaintiff's teaching position at Flood Brook. See In re Handy, 171 Vt. 336, 343, 764 A.2d 1226, 1234 (2000) (Court will not reverse an erroneous trial court decision if record discloses any legal ground justifying result, even if ground was not raised below or was not briefed by parties on

appeal); *Richards v. Union High Sch. Dist. No. 32*, 137 Vt. 132, 134, 400 A.2d 987, 989 (1979) (same).

The facts giving rise to plaintiff's discrimination claim as found by the arbitrator are the following. The Flood Brook Union School District Board of School Directors hired plaintiff to teach at the Flood Brook Elementary School in 1981. Prior to and during her employment at the school, plaintiff suffered migraine headaches, vomiting, and other allergic reactions to various substances like mold, mildew, dust, different types of fuel, road paving materials, cleaning solvents, wood stove odors, perfumes, carpets, cats and dogs. Her reactions occurred both inside and outside the school building, causing her to curtail her social activities and to avoid some public areas to limit her exposure to substances that triggered her allergies. To further minimize her exposure, plaintiff taught in a classroom equipped with an air exchanger from 1989 through 1993.

In the summer of 1993, the school board renovated part of the school building, including constructing a new media center and technology room, and did minor work such as painting on the building's remainder. When plaintiff returned to teach in mid-September she reacted to the new carpeting, paint solvents and fumes still present in the school. Her doctor recommended that she remain out of school for three to five weeks and return with controlled exposure to environmental triggers. She returned to work on October 25, 1993 in the media center at the principal's request. She became ill from the media center's new carpeting, however, and has not taught at Flood Brook since October 28, 1993.

By November 4, 1993, plaintiff was running out of sick leave and requested that the school board grant her additional sick days on the grounds that a 1985 toxic urethane solvent spill outside her classroom caused her sensitivities to chemicals. On November 9, 1993, the school principal informed plaintiff that the board had denied her sick leave request and invited her to request an unpaid leave of absence. Plaintiff refused to request an unpaid leave and instead indicated that she would file a grievance pursuant to the terms of her contract. She also stated that she would initiate a claim for workers' compensation.

While the sick leave grievance and workers' compensation claim were pending, and without prior notice to plaintiff, the board voted to deny renewal of plaintiff's contract. Two days later on March 16, 1994, and again without advance notice to plaintiff, the board voted to

immediately terminate her contract. On March 22, the board informed plaintiff by letter that it had terminated her employment for "failure to attend to [her] duties as a teacher and [her] unwillingness to accept the unpaid leave of absence offered by the school district." Plaintiff thereafter grieved her termination. The termination and sick leave decisions were eventually the subject of binding arbitration as provided for in plaintiff's contract.

Prior to the arbitration merits hearing, the arbitrator issued a procedural order which addressed the parties' question concerning whether the arbitrator would permit evidence and entertain arguments "that have the look or sound of" disability discrimination claims. Plaintiff argued that such matters were germane to the "just and sufficient cause" standard for nonrenewal and termination in Section 5.3 of her contract, although she conceded that the arbitrator lacked authority to decide whether the board had discriminated against plaintiff due to her disability. The arbitrator's procedural order stated that he would allow "evidence relating to the illness or medical condition that caused the [plaintiff] to use sick leave, the cause or causes of that condition, and the School District's responses to her condition." The procedural order also addressed the parties' question concerning burden of proof, concluding that plaintiff bore the burden on "issues relating to the nature and cause of the illness or medical condition that caused [her] to use sick leave and *whether that condition should entitle her to special treatment or consideration.*" (Emphasis added.) The arbitrator and parties agreed that plaintiff must litigate any disability discrimination claim in a different forum.

In accordance with the procedural order, the parties litigated plaintiff's medical history, medical condition and the history of accommodations the school district had offered plaintiff until her March 1994 termination. The arbitrator denied plaintiff's grievance on the sick leave issue because she failed to establish that her contract entitled her to additional sick leave.

The arbitrator reached a favorable conclusion on plaintiff's termination and nonrenewal claims, however. He determined that the school district's nonrenewal and termination decisions violated all of the procedures specified in plaintiff's contract. The arbitrator ordered the school to reinstate plaintiff to a position equivalent to, or the same as, the position she held during the 1993-1994 school year, which was a sixth grade position. Consistent with the procedural

order, the parties also litigated whether plaintiff's condition required any special treatment upon reinstatement.

Among plaintiff's requested remedies were accommodations for her medical condition, including (1) an air exchanger in her classroom, (2) limiting her exposure to wood chip odors and cleaning solvents, (3) being excused from walking students to buses and permitting her to take private transportation for field trips to avoid bus fumes, and (4) permission to avoid certain areas in the school building like the media center, technology room and other classrooms where her co-teachers were located. The arbitrator concluded that reinstatement "with appropriate accommodations for her allergy problems" was warranted. The arbitrator therefore granted plaintiff's request for accommodations, except her request to avoid the media center, the technology room and the classrooms of her team teachers. Agreeing with the school board that if plaintiff could not teach in those locations she could not perform an essential function of her job, the arbitrator found that "[a] teacher who is confined to her classroom and cannot accompany students to critical learning areas of the school cannot perform fully as a teacher." He noted that nothing in the teaching contract required the school district to accommodate plaintiff "in ways that will alter the character of her teaching position or significantly diminish her ability to perform critical educational functions with students."

The arbitration award and the fact findings contained therein preclude plaintiff's attempt to reexamine whether teaching in the media center, technology room and her team teachers' classrooms is an essential function of her job at Flood Brook. Arbitration, being similar to a judicial inquiry, "has the same force and effect of an adjudication in terms of precluding the same parties from relitigating the same subject." *Agway, Inc. v. Gray,* 167 Vt. 313, 316, 706 A.2d 440, 442 (1997). An arbitration award will preclude relitigation of an issue in a subsequent judicial proceeding where the parties and issues in both proceedings are the same, the issues were resolved by a final award on the merits, the arbitration provided a full and fair opportunity to litigate the issues, and it is fair to preclude the subsequent litigation. See *In re Cent. Vt. Pub. Serv. Corp.,* 172 Vt. 14, 20, 769 A.2d 668, 673 (2001) (setting out elements of collateral estoppel). Issue preclusion applies to issues of fact as well as law. See Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact . . . is actually litigated and determined by a valid and final

judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."); see also *In re Freeman*, 30 F.3d 1459, 1466 (Fed. Cir. 1994) (a fact finding in a previous action may preclude relitigation of the same fact in a later action if the finding was necessary to the judgment in the previous action). The critical inquiry is "whether the party to be bound has had a full and fair opportunity to contest an issue resolved in an earlier action so that it is fair and just to refuse to allow that party to relitigate the same issue." *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 266, 583 A.2d 583, 588 (1990).

Based on the record before us, we believe plaintiff had a full and fair opportunity to litigate whether her job at Flood Brook Elementary School required her to teach outside her own classroom in other parts of the school building like the media center, technology room and other classrooms. Plaintiff and the school board were given the opportunity during the four-day arbitration hearing to present evidence, give oral statements and submit post-hearing briefs. Plaintiff herself put the matter in issue before the arbitrator by requesting an accommodation that would allow her to avoid those duties. The arbitrator's decision reflects that he considered and rejected the same arguments on this factual issue that plaintiff asserted before the trial court. We therefore find no unfairness in precluding plaintiff from attempting to circumvent the binding effect of the arbitrator's finding that avoiding key learning areas would "alter the character of her teaching position" and would "significantly diminish her ability to perform critical educational functions with students." Those findings compel the legal conclusion that plaintiff could not perform the essential functions of her job. See *State v. G.S. Blodgett Co.*, 163 Vt. 175, 182, 656 A.2d 984, 989 (1995) (duties that are legitimate and necessary to meet the goals of a particular job are essential job functions for the purposes of disability discrimination). Therefore plaintiff is not a "qualified individual with a disability" entitled to relief under 21 V.S.A. § 495(a)(1), and her claim was properly dismissed.

## II.

Plaintiff contests the court's grant of summary judgment to the school defendants on her retaliation claims. Plaintiff's complaint alleged that the school defendants retaliated against her by refusing

her request for additional sick leave in November 1993 and terminating and not renewing her contract. She alleged the school defendants took those retaliatory actions because she filed a complaint with the Vermont Occupational Health and Safety Administration about the conditions at the school in October 1993, filed a workers' compensation claim in November 1993 and asked for accommodations due to her allergic reactions to the school environment.

We review orders resolving summary judgment motions using the same standard as the trial court. *Wentworth v. Fletcher Allen Health Care*, 171 Vt. 614, 616, 765 A.2d 456, 459 (2000) (mem.). Summary judgment is appropriate only where the depositions, pleadings, interrogatory answers, admissions and affidavits on file show that no genuine issue of material fact exists and "any party is entitled to a judgment as a matter of law." V.R.C.P. 56(c)(3). On summary judgment, the court may not act as the trier of fact, but instead must draw all reasonable inferences and doubts in the nonmoving party's favor, *Wentworth*, 171 Vt. at 616, 765 A.2d at 459-60, and must "regard all properly supported allegations presented by the opposing party as true." *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 159, 624 A.2d 1122, 1127 (1992).

■ To succeed on her retaliation claims, plaintiff must show that (1) she was engaged in a protected activity, (2) the school defendants knew of that activity, (3) plaintiff suffered adverse employment action, and (4) a causal connection exists between plaintiff's protected activity and the adverse employment action. *Gallipo v. City of Rutland*, 163 Vt. 83, 92, 656 A.2d 635, 642 (1994). Plaintiff may establish the required causation indirectly through the timing of her protected activity and the school defendants' alleged retaliatory actions. *Id.* at 93, 656 A.2d at 642. If plaintiff establishes a prima facie case of retaliation, defendants must proffer a legitimate, non-discriminatory reason for their actions. *Murray v. St. Michael's College*, 164 Vt. 205, 210, 667 A.2d 294, 299 (1995). Plaintiff then must prove by a preponderance of the evidence that the school defendants' reasons for their actions are a pretext for discrimination. *Id.*

The superior court concluded that although she had established a prima facie case of retaliation, plaintiff had failed to meet her burden to establish pretext. It noted that plaintiff did not proffer any evidence of direct retaliatory motive and school officials repeatedly testified that no such motive existed. The court faulted plaintiff for

relying solely on the timing of the adverse employment decisions relative to her requests for accommodation, her VOSHA complaint and her request for workers' compensation.

We need not decide whether timing alone is sufficient to establish pretext because there was additional evidence in the record from which a jury could conclude that the school defendants retaliated against plaintiff. That additional evidence included the arbitrator's award, which determined that the school board's termination decision "was in clear violation of [plaintiff's] procedural rights" by "omitt[ing] every procedural protection afforded to a teacher, including the right to counsel and a full, fair and impartial hearing before the termination decision is made." A clear violation of an employee's legal rights or rights under an employer's established policy can be evidence of retaliatory motive sufficient to prove pretext. See *Sorrells v. Veterans Admin.*, 576 F. Supp. 1254, 1265 (S.D. Ohio 1983) (agency's noncompliance with its procedures can create inference of a retaliatory motive); see also 2 L. Larson, Employment Discrimination § 35.05, at 35-25 to 35-26 (2d ed. 2001) (an employer's response to an employment situation that is different from response in employer's ordinary policy is evidence of pretext in retaliation cases). The undisputed evidence also showed that plaintiff won reinstatement through the arbitration process to a sixth grade position or its equivalent. In July 1995, the school defendants offered her a kindergarten teaching position instead. When plaintiff objected because she was inexperienced at that level, they offered her a sixth grade position which they previously discovered she could not accept because she had no license for that position and was not qualified to obtain one at that time. The school defendants also refused to request a waiver of the licensing requirements. The school defendants' hollow offer following arbitration could lead a jury to find that they were intent on preventing plaintiff from ever teaching at Flood Brook again, and thus their reasons for her termination were pretextual. Finally, it is not insignificant that the arbitrator concluded the school board's decision to terminate plaintiff based on her unwillingness to accept unpaid leave amounted to retaliation for grieving her claim for additional sick leave. The trial court erroneously granted summary judgment to the school defendants in light of the additional evidence because a genuine issue for trial existed.

## III.

■ Plaintiff contests the trial court's grant of summary judgment to the individual school board defendants in their personal capacities on all claims because it determined that the doctrine of qualified immunity barred those claims. Qualified immunity is available to protect public officials from suits where the officials perform a discretionary function in good faith and within the course and scope of their employment. *Murray v. White*, 155 Vt. 621, 627, 587 A.2d 975, 978 (1991). Plaintiff does not contest that the school board members performed a discretionary function that was within the course and scope of their employment when they terminated her. The central issue here is whether the school board members acted in good faith.

■ We use an objective standard when assessing whether a public official's acts were taken in good faith. *Rich v. Montpelier Supervisory Dist.*, 167 Vt. 415, 423-24, 709 A.2d 501, 506 (1998). "Good faith exists where an official's acts did not violate clearly established rights of which the official reasonably should have known." *Sabia v. Neville*, 165 Vt. 515, 521, 687 A.2d 469, 473 (1996). In this case, the trial court necessarily determined the school board defendants acted in good faith and were therefore immune from suit because the court dismissed plaintiff's claims on summary judgment. In light of our reversal of the trial court's decision on plaintiff's retaliation claim because factual disputes exist with respect to that claim, we also reverse the court's decision immunizing the school board defendants in their individual personal capacities. See *id.* at 525, 687 A.2d at 475 (because fact finder could conclude that defendants violated statutory duties that were clear and mandatory, it is error to find as a matter of law that defendants were protected by qualified immunity); see also *Rich*, 167 Vt. at 424, 709 A.2d at 507 (disputed factual issue central to plaintiff's retaliation claim precluded summary judgment on qualified immunity).

## IV.

Plaintiff asserted claims against DOE and its licensing officer Patricia Pallas under 42 U.S.C. § 1983 for deprivation of her rights to liberty and procedural and substantive due process under the United States Constitution and due process and liberty under the Vermont

Constitution.[2] The trial court granted judgment on the pleadings to DOE and Pallas in her official capacity only on the federal constitutional claims. In that same order, it also awarded judgment to DOE and Pallas, in her official and individual capacities, on the claims arising under the Vermont Constitution. In a subsequent order, the court entered summary judgment for Pallas in her individual capacity on the federal constitutional claims. Those claims share a common factual basis, which we set forth using a similar standard. Compare *Thayer v. Herdt*, 155 Vt. 448, 456, 586 A.2d 1122, 1126 (1990) (for purposes of a motion for judgment on the pleadings, all well pleaded factual allegations in nonmovant's pleadings and all reasonable inferences that can be drawn therefrom are assumed true, and all contravening assertions in nonmovant's pleadings are presumed false), with *Wentworth*, 171 Vt. at 616, 765 A.2d at 459-60 (on summary judgment court must take as true nonmoving party's supported factual allegations and give nonmoving party benefit of all reasonable doubts and inferences).

Prior to her employment at Flood Brook, plaintiff was certified to teach English and social studies in New Jersey. In November 1982, plaintiff was under contract to teach secondary English at Flood Brook and applied to DOE for certification in secondary English and social studies. In response to her application, DOE sent plaintiff a teaching certificate with an endorsement for elementary teaching rather than secondary English and social studies for which she was qualified. Plaintiff returned the certificate to DOE with a note pointing out the error and a request to issue her the secondary license she sought. Pallas returned the erroneously issued certificate back to plaintiff with no changes. Plaintiff tried calling Pallas to discuss the error by leaving messages at her office, but never received a call back. Concerned, plaintiff spoke to the school superintendent. The superintendent informed plaintiff that he had obtained a waiver to allow her to teach elementary grades and her secondary license was covered by a reciprocal agreement with the State of New Jersey.

DOE, through Pallas, continued to reissue plaintiff a license with elementary level endorsements each time her license was up for

---

[2] Plaintiff's complaint also alleged federal due process violations against the school defendants that the trial court dismissed on summary judgment. Plaintiff makes no argument challenging that decision and has therefore waived any such challenge on appeal. *In re Smith, Bell & Hauck Real Estate, Inc.*, 132 Vt. 295, 300, 318 A.2d 183, 187 (1974).

renewal. In April 1991, however, Pallas sent plaintiff a certificate with secondary English and social studies endorsements only, but it was returned because DOE did not have plaintiff's correct address. In September 1991, plaintiff again applied for a license with secondary endorsements, and in response, Pallas wrote plaintiff that her license did not expire until June 1994. Pallas's letter also stated that plaintiff's license already reflected authority to teach secondary English and social studies. Plaintiff never received that letter; she first became aware of it in 1995 after the arbitration proceeding.

Plaintiff applied for renewed certification in 1994. She requested renewed authority to teach elementary students as well as secondary English and social studies. The license she received back from DOE showed endorsements in all three areas she had requested. In August 1995, however, DOE informed plaintiff's attorney that DOE had issued her elementary license erroneously and that plaintiff's circumstances and DOE regulations did not permit the agency to waive the licensing requirements. As noted previously, plaintiff was unable to accept Flood Brook's offer to teach sixth grade following the arbitration proceeding because she did not have the proper license to do so.

### A.

We first examine plaintiff's federal claims under 42 U.S.C. § 1983 against DOE and Pallas. It is well settled that any § 1983 action claiming deprivation of a constitutional right requires proof of a violation of the underlying constitutional right asserted. *Daniels v. Williams*, 474 U.S. 327, 330 (1986). Because no constitutionally protected interests are evident from plaintiff's due process claims, we affirm the trial court's dismissal of them.

The Fourteenth Amendment's Due Process Clause is implicated where property or liberty interests are at stake. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). While procedural due process is concerned with the process used to deprive a person of a protected interest, *id.* at 569-70, the substantive component of the Due Process Clause protects individuals against arbitrary government action irrespective of the procedures used to take the action. *Conrad v. County of Onondaga Examining Bd. for Plumbers*, 758 F. Supp. 824, 828 (N.D.N.Y. 1991). Plaintiff grounds her procedural due process claim against the state defendants on her alleged property

interest in the erroneously issued elementary teaching license.[3] We agree with the trial court that plaintiff had no protectable property interest in the erroneously issued license.

A property interest arises when a person has a "legitimate claim of entitlement" to a government benefit and not merely a "unilateral expectation" of receiving that benefit. *Roth*, 408 U.S. at 577; *Gallipo*, 163 Vt. at 86, 656 A.2d at 638. "[W]hether an applicant has a legitimate claim of entitlement to the issuance of a license or certificate should depend on whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 59 (2d Cir. 1985). In this case, there is no genuine dispute that plaintiff was not entitled to an elementary endorsement on her teaching license because she had not met the qualifications for the endorsement. Plaintiff therefore had no legitimate claim of entitlement to elementary teaching certification.

Plaintiff nevertheless argues that the state's repeated issuance of the elementary endorsement gave rise to a property interest in the erroneous license; thus, the state was required to afford her due process prior to revoking it. Although cases have found a property right created by the repeated renewal of a government-issued license, see, e.g., *Richardson v. Town of Eastover*, 922 F.2d 1152, 1157 (4th Cir. 1991), those cases presuppose that the license being renewed was properly issued in the first place. DOE had no authority to issue plaintiff a license to teach elementary school unless she was legally qualified to do so. We note that, when confronted with a similar claim regarding an erroneously issued license, the Minnesota Supreme Court concluded that no protected property interest arises when a state officer issues a license under a mistake of fact or contrary to applicable regulations. *Snyder v. City of Minneapolis*, 441 N.W.2d 781, 792 (Minn. 1989). We need not decide that issue in this case, however, because even if plaintiff were correct, the outcome of the state's process would have required it to deny plaintiff's claim because she lacked qualifications for the elementary endorsement. Thus, the lack of a hearing prior to the license withdrawal did not visit any harm upon plaintiff.

---

[3] Plaintiff also claimed a property interest in a waiver of the requirements for the elementary endorsement. Plaintiff's brief offers no argument on this point, and we therefore do not address it. *In re Smith, Bell & Hauck*, 132 Vt. at 300, 318 A.2d at 187.

## B.

Plaintiff's substantive due process claim must also fail because she has no constitutional liberty interest in the elementary endorsement or a waiver of the requirements for such endorsement. The liberty protected by the Due Process Clause is broad, and includes the freedom to engage in the "occupations of life." *Roth*, 408 U.S. at 572. Although the Constitution prohibits state regulation of professional employment from "foreclos[ing] a range of opportunities" in a way that does not comport with due process, *id.* at 574, state action that forecloses a single or narrow range of opportunities does not implicate a liberty interest protected by the Due Process Clause. See *id.* at 575. In plaintiff's case, the state's withdrawal of her elementary endorsement, and its refusal to grant a waiver outside of its normal procedures, did not foreclose altogether her ability to pursue teaching as a profession. It is undisputed that plaintiff remained certified to teach secondary level students. Therefore, she had no liberty interest for which the substantive component of the Due Process Clause might afford her relief.[4]

## C.

Plaintiff next alleges that the trial court erroneously dismissed her due process claims against the state defendants under the Vermont Constitution. The state defendants moved for judgment on the pleadings on this count arguing, in part, that they did not have fair notice of the claims because plaintiff did not cite the specific constitutional provisions supporting them. In response to the motion, plaintiff argued that she was proceeding directly under the Vermont Constitution, but again did not specify which constitutional provision grounded her cause of action. The trial court thereafter granted the state defendants' motion concluding that plaintiff had failed to plead her state constitutional claims with sufficient specificity. On appeal, plaintiff identifies Chapter I, Article 4 of the Vermont Constitution as the basis for her constitutional claims. Plaintiff's argument on appeal only highlights the need for specificity when pursuing claims for damages under the Vermont Constitution.

---

[4] Even if plaintiff had a protected liberty interest in this case, her due process claims were properly dismissed because her allegations state nothing more than negligent conduct by the state officials, and negligent conduct is not actionable under § 1983. *Daniels*, 474 U.S. at 328.

Damages are not necessarily available to remedy violations of a person's rights under the Vermont Constitution. In any given case, the court must conduct a two-step inquiry of the particular constitutional provision involved. *Shields v. Gerhart*, 163 Vt. 219, 222, 658 A.2d 924, 927 (1995). That inquiry's first step involves determining whether the constitutional provision at issue is self-executing. *Id.* Thus, one must first know under which constitutional provision plaintiff claims protection before analyzing whether the provision is self-executing.

■ Plaintiff's complaint alleged only that defendants denied her "procedural and substantive due process and liberty in violation of the . . . Vermont constitution[]." Although plaintiff contends here that her allegation fairly apprised defendants that her claim arose under Article 4, her allegation could also be construed to refer to Article 10, which prohibits the state from depriving a person of liberty without due process. Vt. Const. ch. I, art. 10; *State v. Messier*, 145 Vt. 622, 627, 497 A.2d 740, 743 (1985). Plaintiff is correct that we have held Chapter I, Article 4 as "the equivalent to the federal Due Process Clause." *Quesnel v. Town of Middlebury*, 167 Vt. 252, 258, 706 A.2d 436, 439 (1997). We have also held, however, that it does not "create substantive rights" but ensures access to the courts. *Shields*, 163 Vt. at 223, 658 A.2d at 928. Under the circumstances, we cannot say that the grounds upon which plaintiff's state constitutional claims rested were readily discernible from the face of the complaint. See *Lane v. Town of Grafton*, 166 Vt. 148, 152-53, 689 A.2d 455, 457 (1997) ("[A] pleading is sufficient as long as it gives fair notice of the claim and the grounds upon which it rests."). Thus, the trial court did not err by dismissing plaintiff's state constitutional claims for lack of specificity.

## V.

■ The trial court also dismissed plaintiff's negligence claim against the State on the grounds that no comparable private analogue to her claim existed as required by 12 V.S.A. § 5601(a) to overcome the bar of sovereign immunity. Plaintiff argues the court erred by dismissing her claim against the State because this case involves the execution of statutory duties under a predictable standard for decision making, and, therefore, her claim is viable against the State. To sustain a tort claim against the State, plaintiff must demonstrate that her claim is "comparable to a recognized

cause of action against a private person." *Sabia v. State,* 164 Vt. 293, 298, 669 A.2d 1187, 1191 (1995); see also 12 V.S.A. § 5601(a) (State liable for injury only under same circumstances, in same manner, and to same extent as private person would be liable). Plaintiff also must establish that no exception to the State's waiver of its immunity applies to her claim. *Sabia,* 164 Vt. at 307-08, 669 A.2d at 1196-97. Plaintiff's argument on appeal addresses the latter issue only. Plaintiff presents no argument on how her claim is "comparable to a recognized cause of action against a private person." We consider plaintiff's brief to be wholly inadequate on the negligence issue because it omits discussion of an essential element of her claim. We therefore have no reason to disturb the trial court's dismissal of her negligence claim against the State. See *Buttura v. Buttura,* 143 Vt. 95, 98, 463 A.2d 229, 230 (1983) (Court will not address claim of error where error is inadequately briefed).

## VI.

Plaintiff next claims the trial court abused its discretion by denying her motion to amend the complaint to include allegations of gross negligence against defendant Pallas. Plaintiff moved to amend her complaint after the trial court granted Pallas's motion for judgment on the pleadings due to the immunity from suit 12 V.S.A. § 5602(a)[5] provides when state employees act within the scope of their employment. The court denied plaintiff's request to amend the complaint, reasoning that the amendment would be futile because no reasonable person could infer that the acts plaintiff ascribed to Pallas in her complaint were grossly negligent. See *Gus' Catering, Inc. v. Menusoft Sys.,* 171 Vt. 556, 559, 762 A.2d 804, 808 (2000) (mem.) (trial court did not err by denying leave to amend complaint where amendment would be futile). We agree.

To sustain a claim for gross negligence, plaintiff must present facts that demonstrate Pallas heedlessly and palpably violated a legal duty she owed to plaintiff. See *Shaw v. Moore,* 104 Vt. 529, 531, 162 A. 373,

---

[5] Section 5602(a) states:

When the act or omission of an employee of the state acting within the scope of employment is believed to have caused damage to property, injury to persons, or death, the exclusive right of action shall lie against the state of Vermont; and no such action may be maintained against the employee or the estate of the employee.

12 V.S.A. § 5602(a).

374 (1932) (gross negligence "is a heedless and palpable violation of legal duty respecting the rights of others"). Stated differently, one who fails to exercise "'even a slight degree of care'" or acts indifferently to the duty owed to another may be grossly negligent. *Rivard v. Roy*, 124 Vt. 32, 35, 196 A.2d 497, 500 (1963) (quoting *Emery v. Small*, 117 Vt. 138, 140, 86 A.2d 542, 543 (1952)). Generally, whether an individual was grossly negligent is a question for the jury, except where reasonable persons cannot differ on the question. *Hardingham v. United Counseling Serv. of Bennington County, Inc.*, 164 Vt. 478, 481, 672 A.2d 480, 483 (1995). We agree with the trial court that reasonable minds could not differ that plaintiff's allegations failed to make out a case of gross negligence against Pallas.

■ Plaintiff's amended complaint against Pallas asserted the following facts: (1) Pallas issued plaintiff a one-year teaching certificate with elementary endorsement only, although plaintiff's application sought certification in secondary English and social studies; (2) plaintiff received the certificate back from Pallas's office after returning it to DOE with a request for correction; (3) Pallas issued her a renewed elementary teaching certificate even though plaintiff's renewal form indicated her experience had been at the secondary level; (4) plaintiff attempted to contact Pallas about the discrepancy "to no avail"; (5) Pallas again issued a renewed certificate with an elementary endorsement in 1987; (6) Pallas issued plaintiff endorsements in secondary English and social studies in November 1991; (7) Pallas never notified plaintiff that she was not certified in elementary level education between 1982 and 1991; (8) Pallas did not provide plaintiff with a hearing either before or after plaintiff learned she did not have a license to teach at the elementary level; and (9) Pallas would not waive the certification requirements unless the school district's superintendent submitted a written request to do so. Even assuming that Pallas had a legal duty to plaintiff, an issue we do not and need not decide, we fail to see how these facts show a "heedless and palpable violation" of plaintiff's rights. We are mindful that plaintiff filed her motion to amend nearly three years after she filed her complaint and after substantial discovery had taken place. Yet even after all that time, plaintiff did not include any new facts in her proposed amended complaint concerning Pallas's actions to support a claim of gross negligence.

Consequently, we find no abuse of the court's discretion in denying plaintiff's motion to amend.

## VII.

Finally, plaintiff contests the trial court's dismissal of her estoppel, waiver and laches claims against DOE and Pallas, and her estoppel claim against the school defendants. In Count IV of her complaint, plaintiff alleged causes of action against all defendants for damages and equitable relief based on the theories of estoppel, waiver and laches. As to the state defendants, the trial court dismissed these claims on the grounds that plaintiff had failed to establish the elements necessary to withstand summary judgment. The trial court dismissed the same claims against the school defendants because it reasoned the claims should have been raised in the arbitration proceeding and therefore res judicata precluded their relitigation in the superior court. We affirm because estoppel, waiver and laches are all affirmative defenses; they are not causes of action that provide a basis for a lawsuit. See *Vt. Nat'l Bank v. Dowrick*, 144 Vt. 504, 508, 481 A.2d 396, 398 (1984) (estoppel is an affirmative defense, it "is not a cause of action in and of itself cognizable as a counterclaim"); *Preston v. Chabot*, 138 Vt. 170, 172, 412 A.2d 930, 931 (1980) (laches is an affirmative defense); 1 D. Dobbs, Law of Remedies § 2.3(5), at 84-86, 88-89 (2d ed. 1993) (discussing waiver, estoppel and laches as closely related equitable defenses); see also V.R.C.P. 8(c) (setting forth estoppel, waiver, and laches as affirmative defenses that must be specifically pled); *Snyder*, 441 N.W.2d at 790-91 (estoppel does not provide basis for damages claim but is defense against claim of estopped party). Each of these equitable doctrines seek to prevent injustice through either an adverse party's misleading conduct, unreasonable delay or voluntary and knowing relinquishment of that party's known right. They do not, however, provide plaintiff with an independent source for damages or other relief.

Although we affirm the trial court's dismissal of plaintiff's causes of action based on estoppel, waiver and laches, we must address the doctrine of estoppel in relation to an issue the school defendants raised in their briefs. The school defendants argue that the deficiency in plaintiff's teaching credentials is an intervening efficient cause of any harm she suffered after September 27, 1995, the date they offered plaintiff the sixth grade teaching position that she could not

accept, and therefore they should not be required to bear the burden of that harm. It is here that plaintiff's estoppel theory has application.

Equitable estoppel operates to prevent a party from " 'asserting rights which may have existed against another party who in good faith has changed his or her position in reliance upon earlier representations.' " *Beecher v. Stratton Corp.*, 170 Vt. 137, 139, 743 A.2d 1093, 1095 (1999) (quoting *Fisher v. Poole*, 142 Vt. 162, 168, 453 A.2d 408, 411 (1982)). The party asserting estoppel has the burden to demonstrate that the following elements are met: (1) the party against whom estoppel is claimed knows the facts; (2) that party intends that his or her conduct will be acted upon or that the conduct is such that the party asserting estoppel has a right to think it should be acted upon; (3) the party seeking estoppel is ignorant of the true facts; and (4) that party detrimentally relied upon the other party's conduct. *Id.* at 140, 743 A.2d at 1096.

Taking plaintiff's evidence in the light most favorable to her, we believe the school defendants may be estopped from asserting their intervening efficient cause defense to any harm the jury might find on plaintiff's retaliation claim after September 27, 1995. Throughout this litigation, plaintiff has consistently contended that the school district superintendent informed her that he had obtained a waiver of the elementary level teaching certification requirements.[6] She alleges that she thought her elementary license was valid based upon the superintendent's representation to her at the outset of her employment at Flood Brook. Consequently, she did not vigorously pursue the license defect. According to the parties, DOE requirements in effect at that time assigned sole responsibility for requesting waivers to the superintendent. See Memorandum from James G. Lengel, Vermont Department of Education, to Superintendents 1 (October 3, 1983). There is no genuine dispute that the superintendent did not actually request or obtain a waiver for

---

[6] When the trial court addressed plaintiff's estoppel claim, it declined to use the fact of the superintendent's statement to plaintiff, believing the statement was inadmissible hearsay. Because plaintiff offered the statement to prove why she did not pursue her teaching credentials further with DOE rather than to prove that the superintendent had in fact requested and obtained a waiver, the statement is not hearsay. V.R.E. 801(c); see also V.R.E. 801(d)(2) (out-of-court statement, offered by opposing party, made by agent during course of employment and about matter within scope of agency or employment is a party admission, not hearsay).

plaintiff. The context in which the superintendent made his statement to plaintiff shows that he intended plaintiff to take action upon his statement, namely, not to worry about her certification because it was all in order. There was no reason for plaintiff to know that the superintendent had not followed through on the waiver issue. She had possession of a license for elementary teaching over the course of several years. Moreover, the requirements regarding waiver in effect at that time did not require plaintiff to do anything to obtain the waiver, and there is no indication that the requirements required any notice to the affected teacher about the waiver. *Id.* at 1-2. Finally, plaintiff has shown that she detrimentally relied on her belief that she was not required to do anything more to obtain certification for elementary level teaching. Thus, if the jury believes plaintiff that the superintendent told her he had requested and obtained a waiver to allow her to teach elementary level students, the school defendants would be estopped from disavowing responsibility for any damages occurring after September 27, 1995 on the basis of efficient intervening cause.

*The trial court's order on plaintiff's retaliation claims and on the Flood Brook Union School District School Board of Directors' claims for qualified immunity in their personal capacities are reversed and remanded for further proceedings not inconsistent with this opinion. In all other respects the trial court's orders of March 9, 1999, February 23, 2000, and February 24, 2000 are affirmed.*