STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION
                                                  Docket No. 34-2-10 Vtec

In re: Audet Wastewater System
& Water Supply Permit
        (Appeal of Ewen & Mitchell)

Decision and Order on Pending Motions

Appellants Vicki L. Ewen and John R. and Dorothy R. Mitchell appeal from a decision of the Department of Environmental Conservation (DEC) of the Vermont Agency of Natural Resources (ANR) issuing Wastewater System and Potable Water Supply Permit No. WW-5-4533-2 to Appellee-Applicant R. Joseph Audet (Applicant). Appellants are represented by Christopher J. Smart, Esq.; Appellee-Applicant is represented by David J. Blythe, Esq.; the Agency of Natural Resources is represented by Anne F. Whiteley, Esq; and the Town of Worcester is represented by Robert M. Fairbanks, Esq. The Water Resources Panel of the Natural Resources Board has not entered an appearance as a party but has informational status in this appeal.

At a telephone conference held on March 22, 2010, the Court extended the stay issued in this case until resolution of the parties' cross-motions for summary judgment on Question 2 of the Statement of Questions: whether Appellee-Applicant's proposed project is exempt from the current standards in the ANR's Wastewater System and Potable Water Supply Rules,[1] and, in particular, whether it is exempt by operation of the "rebuild" or "reconstruction" exemption found under § 1-304(a)(21) of those Rules.

_____

[1] The Wastewater System and Potable Water Supply Rules applicable to the proposal on appeal took effect on September 20, 2007. See Wastewater System and Potable Water Supply Rules (2007) [hereinafter WSPWS Rules], available at http://www.anr.state.vt.us/dec/ww/Rules/OS/2007/FinalWSPWSRuleEffective20070929.pdf.

1

At the March 22 conference, the Court established a schedule for the parties to file cross-motions for summary judgment regarding Question 2 by April 22, 2010, with responses to be filed by May 10, 2010.

However, rather than filing cross-motions for summary judgment regarding Question 2 of the Statement of Questions, Appellants filed a "Res Judicata Motion" and Applicant filed a "Motion to Preclude Evidence." Although Appellants labeled their motion as one for res judicata, they have essentially moved the Court to "collaterally estop" Applicant from relitigating a factual issue that they assert was conclusively established in prior civil litigation before the Washington Superior Court, Audet v. Town of Worcester, No. 339-6-01 Wncv (Vt. Super. Ct. Mar 28, 2003) [hereinafter 2003 Superior Court Order]. See Appellants' Res Judicata Motion, at 1 (Apr. 21, 2010) [hereinafter Appellants' Motion] ("Technically speaking, the conclusive effect of the [superior court] order (regarding the factual finding) is better described as [collateral estoppel] and that is what this motion will address."). More specifically, Appellants assert that the central (and possibly determinative) issue presented in this appeal—whether the residential structure and associated water and wastewater systems on Applicants' property were all "substantially completed" before they were removed in 2008—is conclusively determined by factual findings from the 2003 Superior Court Order. Therefore, they contend that the issue is barred from being relitigated in this appeal under the doctrine of collateral estoppel or issue preclusion. Appellants' Motion, at 1–5, 7. In response to Appellants' motion, Applicant has moved that the Court "should not adopt any of the findings of the [2003 Superior Court] Order nor give any such findings Res Judicata effect in the present action." Applicant's Motion to Preclude Evidence, at 3 (Apr. 22, 2010) [hereinafter Applicant's Motion].

2

<u>Factual & Procedural Background</u>[2]

Applicant owns an approximately 0.25-acre parcel of property located on Hersey Road (Town Highway 26) in the Town of Worcester, which he purchased in 2001 from a Mr. Robert Pasho. Applicant's property, which measures 75 feet by 100 feet, is bordered on one side by Hersey Road and bordered on the remaining three sides by a 90-acre parcel of property owned by Appellants Mitchell. Appellants Mitchell have owned and occupied their property since 1971. Appellant Ewen owns the parcel of property located directly across Hersey Road from the Audet and Mitchell parcels; she has resided at the property since 1970 and has owned the property since 1983.

<u>Factual Background of Property Prior to 2001</u>

As of Applicant's purchase of the subject parcel in 2001, it contained a two-bedroom house that had been constructed in 1958. Audet Aff. ¶ 2 (Aug. 18, 2009). The house had been served by a septic tank and "dry well" for the disposal of wastewater. Audet Aff. ¶ 3; Lefavour Aff. ¶ 4 (Aug. 19, 2009).

As described in the 2003 Superior Court Order, Mr. Pasho's sister, Lorraine Pasho, and a Ms. Madeleine Brown resided in the house during the 1980s. 2003 Superior Court Order, at 2. While the two women were residing in the house, they were apparently living "without running water or a functioning toilet." <u>Id</u>. In September of 1990, after the two women had left the property, the Town Health Officer condemned the house due to health concerns relating to the condition of the house and

---

[2] For the purposes of this decision only, aspects of the factual background of Applicant's property are taken from the 2003 Superior Court Order and from the parties' affidavits. These facts are not necessarily undisputed in this case, as the parties did not file cross-motions for summary judgment as anticipated and discussed during the March 22, 2010 conference. The Court makes no findings as to those facts in this decision. Any such facts will need to be established by the parties through summary judgment or at trial; they are recited in this decision only for the purpose of providing enough background so that the reader understands the sequence of events relating to Applicant's property.

its wastewater and water supply systems. Id. at 2. The parties have not provided the 1990 condemnation order; however, the superior court quoted the condemnation order as stating that "[t]he previous use of the dwelling without a septic system was found to present a health hazard through ground and surface water contamination" and ordering "that the dwelling presently owned by Mr. Pasho . . . not be occupied until an approved septic system is connected to the dwelling." Id. After the 1990 condemnation, the house remained abandoned and uninhabited; no one has resided at the property since that time and it does not appear that any improvements were made to the property after that time. Id.

### Municipal Wastewater Permit Application & Appeal

Shortly after Applicant purchased the property from Mr. Pasho in 2001, he appeared before the Worcester Selectboard seeking a determination that the septic system serving the single-family house was exempt under the Town's then-existing septic system ordinance. 2003 Superior Court Order, at 3–4; Applicant's Motion, at 5.[3]

---

[3] In 2001, when Applicant sought the determination from the Selectboard under the Town's septic system ordinance, municipalities in Vermont were authorized by statute to regulate and permit septic systems for single-family dwellings through a sewage disposal ordinance. See 24 V.S.A. § 3633(a) (1999) ("A municipality may adopt an ordinance . . . relating to sewage systems."). Although the state also regulated certain sewage disposal systems at that time, see 18 V.S.A. § 1218 (2000), septic systems for certain single-family dwellings were exempt from such state regulation if they were located in a municipality that had adopted a sewage disposal ordinance under 24 V.S.A. § 3633. See 18 V.S.A. § 1218b (2002) ("Single lot subdivisions are exempt from state regulation under section 1218 of this title in any municipality in which the local legislative body has elected to exempt single-lot subdivisions from state regulation . . . ."); id. § 1218c (2002) (outlining requirements for "municipalities which are exempt under section 1218b of this title and which have in effect a sewage disposal ordinance under 24 V.S.A. [§ 3633]"). Because the Town of Worcester had adopted a septic ordinance, Applicant was required to obtain a permit or show that he was exempt under that municipal ordinance, rather than under the state regulations.

More specifically, Applicant sought a determination from the Selectboard that, for the purposes of its use to serve a single-family house, the septic system on his property was exempt from the requirements of the 1996 septic ordinance. 2003 Superior Court Order, at 3–4.[4]  Under the municipal septic ordinance, sewage disposal systems that were "in existence at the time of adoption of [the 1996] ordinance [were] deemed approved" and did not have to comply with the requirements of the ordinance.  Id. (citing § XII of the 1996 septic ordinance).

The Selectboard concluded that that no such septic system was "in existence" on the Audet property in 1996 and that therefore Applicant did not qualify for an exemption from the requirements of the septic ordinance. Id. at 6–8.  Applicant appealed the Selectboard's decision to the Washington Superior Court in Audet v. Town of Worcester, No. 339-6-01 Wncv.

On appeal, the superior court was presented with the issue of whether Applicant's property was exempt from the requirements of the 1996 septic ordinance, that is, whether it fell under the "grandfather" exemption found in § XII of that ordinance.  2003 Superior Court Order, at 5–6.  In order to resolve that legal issue, the superior court had to determine whether Applicant's septic system was "'in existence" as of 1996 when the septic ordinance was adopted.  Id. at 7.

The superior court concluded that the septic tank and dry well on Applicant's property did not qualify as a system that was "in existence" in 1996 because at that time it was "an abandoned septic system attached to an abandoned house" that was "uninhabitable and beyond repair."  Id. at 1, 8.  Accordingly, the Court held that

---

[4] In 2001, Applicant also applied for and obtained a municipal permit for a proposed commercial use on his property.  The commercial use proposal resulted in Act 250 litigation that subsequently became moot when Applicant abandoned his commercial plans for the property.  See generally In re Audet, 2004 VT 30, 176 Vt. 617.

Applicant's septic tank and dry well did "not qualify for the 'grandfather' provisions of Section XII [of the 1996 ordinance]." Id. at 8.


Factual & Procedural History Regarding Permit On Appeal

In September or October of 2008, Applicant demolished and removed what was left of the abandoned two-bedroom house on his property. Russell Aff. ¶ 2 (Aug. 18, 2009). He subsequently applied to the ANR for a Wastewater System and Potable Water Supply Permit under 10 V.S.A. ch. 64 to construct "a 3-bedroom single-family residence and [install] a new water supply and wastewater disposal system" on his property, which the ANR granted on November 6, 2008. Permit No. WW-5-4533-1, at 1 (Nov. 6, 2008).[5] Appellants Mitchell and Ewen appealed the issuance of Permit No. WW-5-4533-1 to this Court in Docket No. 287-12-08 Vtec. However, that appeal was dismissed without prejudice by the Court in order to allow Appellants to exhaust their administrative remedies by seeking reconsideration of the permit decision from the ANR.

Upon a request by Appellants, the ANR undertook a reconsideration of Permit No. WW-5-4533-1, and on May 26, 2009, issued a decision remanding the three-

---

[5] In 2002—after Applicant's request for an exemption under the municipal septic ordinance—the Vermont Legislature enacted 10 V.S.A. ch. 64, which "establish[ed] a comprehensive program to regulate the construction, replacement, modification, and operation of potable water supplies and wastewater systems in the state." 10 V.S.A. § 1971. The 2002 enactment placed the responsibility of regulating and permitting of potable water supplies and wastewater systems in the hands of the state and mandated that "[a]s of July 1, 2007, those provisions of municipal ordinances and zoning bylaws that regulate potable water supplies and wastewater systems are superseded by the provisions of this chapter and the rules adopted under this chapter." Id. § 1976(b). Accordingly, unless and until the Town received delegation of that program under 10 V.S.A. § 1976, any potable water supply or wastewater system proposed by Applicant after July 1, 2007, was governed by 10 V.S.A. ch. 64 and the rules adopted pursuant to that chapter, rather than by the municipal septic ordinance.

bedroom application to the regional office that had initially issued the permit, stating that the ANR would initiate revocation proceedings if Applicant did not submit an amendment application to the regional office by the end of June. Appellants appealed the May 26 remand decision to this Court in Docket No. 100-6-09 Vtec.

In June of 2009—while Appellants' second appeal relating to the three-bedroom proposal, Docket No. 100-6-09 Vtec, was still pending before this Court—Applicant filed an alternative application with the ANR seeking a Wastewater System and Potable Water Supply Permit for a proposed two-bedroom single-family house on the property. That application is the subject of the present appeal. The ANR approved the two-bedroom application and issued Permit No. WW-5-4533-2 to Applicant on February 16, 2010. Because Permit No. WW-5-4533-2 superseded the permit for the previous three-bedroom proposal (Permit No. WW-5-4533-1), the Court dismissed as moot Appellants' appeal of the reconsideration decision that had remanded the three-bedroom proposal for a permit amendment proceeding, Docket No. 100-6-09 Vtec.

Permit No. WW-5-4533-2 authorized Applicant to reconstruct or rebuild a two-bedroom house at the site of the demolished house and to install a new water supply and wastewater disposal system to serve the new house. In issuing the permit, the DEC Regional Programs Manager concluded that the project was exempt from the requirements of the WSPWS Rules under the "rebuild" or "reconstruction" exemption found in § 1-304(a)(21) of the WSPWS Rules. Letter from Roger Thompson, Jr., DEC Reg'l Office Programs Manager, to David J. Blythe, Esq., Attorney for Applicant (Jan. 15, 2010) [hereinafter Jan. DEC Letter]; Letter from Roger Thompson, Jr., DEC Reg'l Office Programs Manager, to David J. Blythe, Esq., Attorney for Applicant (Feb. 11, 2010) [hereinafter Feb. DEC Letter]. The January 15, 2010 and February 11, 2010 letters constitute the ANR "decision" appealed by Appellants in the present case.

To qualify for the reconstruction exemption, an existing house and its "associated potable water supplies and waste water systems" must have been "substantially completed

7

before January 1, 2007." WSPWS Rules § 1-304(a)(1)(A). In issuing the permit, the Regional Engineer determined that there had been a "substantially completed" residential dwelling, a "substantially completed" wastewater system, and a "substantially completed" potable water supply system on the property on January 1, 2007, and therefore concluded that the project qualified for the reconstruction exemption and could receive a permit without satisfying the more stringent requirements that apply to new projects. Jan. DEC Letter, at 1; Feb. DEC Letter, at 1–2.[6]

Overview of Applicable Legal Framework

The application on appeal is governed by the WSPWS Rules, which are administered by the DEC. See generally WSPWS Rules; 10 V.S.A. ch. 64. Under the WSPWS Rules, construction of any "new building or structure" or any "new potable water supply or wastewater system" requires a Wastewater System and Potable Water Supply Permit before it can be constructed. WSPWS Rules § 1-303(a). See also 10 V.S.A. § 1973 (stating that "a person shall obtain a permit from the secretary before . . . constructing, replacing, or modifying a potable water supply or wastewater system" or "constructing a new building or structure"). However, proposed projects that fall under any of twenty-three enumerated exemptions are "exempt from the permitting requirements" and can be approved under the terms of the particular exemption despite their inability to fully comply with the substantive requirements of the WSPWS Rules. Id. § 1-304. See also 10 V.S.A. § 1974 (listing permitting program exemptions). A proposed project that is not exempt and cannot otherwise comply with the WSPWS Rules cannot receive approval under the Rules and is therefore prohibited.

---

[6] The February DEC Letter also noted that the permit would "require variances from some portions of the [WSPWS] Rules but [that] the project qualifies for the exemptions because the application is for the replacement of existing water and wastewater systems and complies with the requirements of section 1-806 of the Rules," which governs "variances." Feb. DEC Letter, at 2.

8

The application currently before the Court in this appeal seeks approval under the "reconstruction" or "rebuild" exemption of the WSPWS Rules, which is found in § 1-304(a)(21). If the proposed project does not qualify as exempt under § 1-304(a)(21), then it cannot otherwise receive approval under the WSPWS Rules and the application must be denied.

The "reconstruction" or "rebuild" exemption allows a residential structure to "be reconstructed" without satisfying all the substantive requirements of the WSPWS Rules if certain conditions are met. Specifically, the exemption states that:

> a building or structure that is exempt or has a permit under these Rules that has been destroyed by fire, flooding, or other act of God or voluntarily removed, may be reconstructed without obtaining a permit or permit amendment[7] provided that:
>
> (A) if permitted on or after January 1, 2007, the reconstructed building or structure is in compliance with all permit conditions;
>
> (B) the building or structure is reconstructed in approximately the same location;
>
> (C) there is no increase in design flow;
>
> (D) there is no change in the operational requirements of the potable water supply or the wastewater disposal system;
>
> (E) if the building or structure is exempt it must be reconstructed within two years of its destruction or voluntary removal unless, on a case by case basis, the Secretary extends the time period based on a determination that there are unavoidable delays in reconstruction. If the building or structure is permitted, there is no time limit for the reconstruction; and

---

[7] Although § 1-304(a)(21) states that a project falling under the "rebuild" or "reconstruction" exemption "may be constructed without obtaining a permit or permit amendment" at all, it appears that, in applying that exemption, the DEC practice is to approve the proposal under the exemption § 1-304(a)(21) and then to issue a WSPWS permit or permit amendment for the exempt project, despite the fact that the exemption itself states that no permit or permit amendment is required.

9

(F) there has been no other change to the building or structure, lot, potable water supply, or wastewater system that would require a permit under these Rules.

Id. § 1-304(a)(21).

The threshold inquiry under the first sentence of the reconstruction exemption is whether the building that is to be reconstructed is "a building or structure that is exempt or has a permit under these Rules that has been destroyed by fire, flooding, or other act of God or voluntarily removed." WSPWS Rules § 1-304(a)(21) (emphasis added). The parties do not dispute that, in this case, the previously existing house was "voluntarily removed" by Applicant in 2008. Nor do the parties dispute that the wastewater and potable water systems serving the previous house did not "ha[ve] a permit" under the WSPWS Rules. Therefore, in order to qualify for the reconstruction exemption the structure must have been otherwise "exempt." The parties do not dispute that the only one of the other exemption provisions found in § 1-304 that could potentially apply in this instance is § 1-304(a)(1); therefore, in order to be exempt under § 1-304(a)(21), the proposal must also be exempt under § 1-304(a)(1).

Section 1-304(a)(1) provides an exemption for "[a]ll buildings or structures . . . and their associated potable water supplies and waste water systems that were substantially completed before January 1, 2007." Id. § 1-304(a)(1)(A) (emphasis added). Applicant's proposed reconstruction project is therefore not eligible for the reconstruction exemption unless the previous house and its associated potable water and wastewater systems were "substantially completed" before January 1, 2007. That is, Applicant must show that each of the three elements—the house itself, the potable water supply system, and the wastewater system—were "substantially completed" as of that date.[8]

---

[8] Note 2 of § 1-304(a)(1) states that "[i]n order to determine whether something is substantially complete or in existence for the purposes of this exemption, the design

10

The WSPWS Rules define "substantially completed" to mean "a building or structure, potable water supply, or [a] wastewater system that is sufficiently constructed so that it can be used for its intended purpose." Id. § 1-201(a)(60). If Applicant's previous house, its associated potable water supply system, and its wastewater system were not each "sufficiently constructed" so that they could each be used "for [their] intended purpose[s]" as of January 1, 2007, then they were therefore not all "substantially completed" on that date and the proposed reconstruction project cannot qualify as exempt under §§ 1-304(a)(1) and (a)(21).

Appellants' Collateral Estoppel Motion

Through their motion, Appellants have moved "for an order collaterally estopping Mr. Audet from retrying in this litigation what was established about a condemned house in prior superior court litigation," that is, what was established in the 2003 Superior Court Order. Appellants' Motion, at 1.

Collateral estoppel, or issue preclusion, "bars the subsequent relitigation of an issue that was actually litigated and decided in a prior case where that issue was necessary to the resolution of the dispute." Scott v. City of Newport, 2004 VT 64, ¶ 9, 177 Vt. 491 (quoting Alpine Haven Prop. Owners Ass'n v. Deptula, 2003 VT 51, ¶ 13, 175 Vt. 559). See also, e.g., Mellin v. Flood Brook Union School Dist., 173 Vt. 202, 209 (2001) (stating that when an issue "is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a

flow and/or use of a building or structure, campground, wastewater system, or potable water supply as it existed no earlier than January 1, 2006 shall be used." In this appeal, whether the Court uses the January 1, 2007 date or the January 1, 2006 date is not material for purposes of the current motion.

11

different claim" (quoting Restatement (Second) of Judgments § 27 (1982))). The doctrine "applies to issues of fact as well as law." Mellin, 173 Vt. at 209.

As stated above, before a court can apply the doctrine of collateral estoppel, it must find that the issue in the previous case was "necessary to the resolution of the dispute." Id. If the issue in the previous case was not "necessary" or "essential to the judgment," Mellin, 173 Vt. at 210, then collateral estoppel cannot serve to bar relitigation of the issue in a subsequent proceeding. See, e.g., Postlewaite v. McGraw-Hill, 333 F.3d 42, 48 (2d Cir. 2003) (If "resolution [of an issue] was not necessary to the judgment, its litigation in a subsequent proceeding is not barred by collateral estoppel" (citations omitted)). An issue is "essential to the judgment" or "necessarily determined" in the previous case "if, in the absence of a determination of the issue, the judgment could not have been validly rendered." Efthimiou v. Smith, 846 A.2d 222, 227 (Conn. 2004) (quoting F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.19." See also, e.g., Restatement (Second) of Judgments § 27 ("If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded"; "[s]uch determinations have the characteristics of dicta.").

In determining whether Applicant's wastewater system was exempt under the "grandfather" provision of the 1996 municipal ordinance, the superior court concluded that the existing septic tank and dry well system was not a system that was "in existence" in 1996 because it was "an abandoned septic system attached to an abandoned house" that was "uninhabitable and beyond repair." 2003 Superior Court Order, at 1, 8. In their motion, Appellants argue that certain conclusions made by the superior court regarding the abandoned house itself are binding in the present appeal. Specifically, Appellants argue that the factual determination made by the superior court that the house was "uninhabitable and beyond repair" bars litigation of an issue presented in this case: whether the house was "substantially completed," that is,

whether it was "sufficiently constructed so that it [could] be used for its intended purpose." WSPWS Rules § 1-201(a)(60). Because the "intended purpose" of the residential dwelling was "year-round occupancy" or "habitation," Appellants argue that the superior court's determination that the dwelling was "uninhabitable and beyond repair" conclusively resolved the issue of whether the dwelling was "substantially completed." Therefore, they contend that the doctrine of collateral estoppel bars Applicant from retrying that issue in the present appeal.[9]

In the superior court case, a finding that the house was "uninhabitable" was not a necessary predicate to the court's conclusion that the wastewater system was not "in existence" in 1996. That is, the superior court could have concluded that the wastewater system was not "in existence" regardless of its factual findings relating to the habitability of the house itself. The superior court case was solely a dispute as to the wastewater system, and therefore the issue in the superior court case of whether the house was otherwise "uninhabitable" was not "essential to the judgment," Mellin, 173 Vt. at 210, or "necessary to the resolution of the dispute." Scott, 2004 VT 64, ¶ 9. Accordingly, the requirements of collateral estoppel are not satisfied as to the habitability of the house itself.

Appellants' motion focused chiefly on the effect of the superior court's conclusion regarding the habitability of the former house; that is, whether the superior court's conclusion that the house "was uninhabitable and beyond repair" conclusively

---

[9] The question of whether the two factual issues were identical or the "same issue" for the purposes of collateral estoppel analysis is a separate question from whether that issue was necessary to the resolution of the prior dispute. That is, the analysis of whether the habitability of the house was necessary to the resolution of the municipal wastewater exemption application is independent of whether the factual issues in the two cases were the same. In the prior case, the issue was whether the house was "uninhabitable" in 1996; in the present case, the issue sought to be estopped is whether the house was "sufficiently constructed so that it [could] be used for its intended purpose" in January 2007.

determines in this appeal the issue of whether the house was "substantially completed," as that term is defined in the WSPWS Rules. However, Appellants' motion also seems to suggest, but does not explicitly argue, that the superior court's conclusions regarding the state of the septic system (as distinct from the condition of the house) should conclusively establish in this appeal that the wastewater system was not "substantially completed" as of January of 2007. In this instance, because Appellants' motion does not clearly argue or establish the elements of collateral estoppel as to any of the superior court's conclusions or factual findings regarding the septic system, the Court does not determine whether the 2003 Superior Court Order has any collateral estoppel effect regarding the wastewater disposal system or the potable water supply system.[10]

Appellants' motion is therefore DENIED because the requirements of collateral estoppel are not met as to the condition of the house. However, this denial does not suggest that the underlying facts stated in the 2003 Superior Court Order are necessarily disputed or that Question 2 of the Statement of Questions cannot be resolved on summary judgment in whole or in part. Indeed, it was the Court's expectation as of the March 22, 2010 conference that such motions would be filed. Please be prepared to discuss at the telephone conference scheduled in this matter (see enclosed notice) what facts are disputed, what can be established through summary judgment, and what elements of Question 2 remain for trial, along with Question 1.

---

[10] Even though the Court does not reach the collateral estoppel issue regarding the wastewater system, the superior court's factual findings regarding the wastewater system may not be susceptible to a collateral estoppel analysis. It is difficult to tell from that order, for example, whether the abandoned wastewater system was capable of functioning as a wastewater system—that is, whether it was "sufficiently constructed so that it [could] be used for its intended purpose," WSPWS Rules § 1-201(a)(60)—because the superior court focused on whether the system was "abandoned" and whether it was actually "in use" or "operating" in 1996, rather than on whether it was capable of being used. 2003 Superior Court Order, at 1–2, 6–8. The parties should be prepared to discuss at the conference whether they wish to move for summary judgment regarding the condition of the wastewater system, the house, or the potable water supply.

<u>Applicants' Motion to Preclude Evidence</u>

Applicant has moved to preclude from evidence the factual findings of the 2003 Superior Court Order on the basis that they "are not relevant to and do not have any evidentiary effect, value or weight in the present action now before the Court." Applicant's Motion to Preclude Evidence, at 1, 6 (Apr. 22, 2010).

In this case, while the 2003 Superior Court Order is not conclusive, the facts found in that order are relevant to the issues on appeal in the present case. More specifically, the facts and conclusions in the order—which concern the condition of the residential dwelling and associated water and wastewater system—are relevant to the issue presented in this appeal of whether the structure and systems were "substantially completed," as that term is used in the WSPWS Rules. This is particularly true in light of the fact that the residential structure is no longer in existence. Accordingly, Applicant's motion to preclude the 2003 Superior Court Order in its entirety on the ground that it is irrelevant is DENIED. If the 2003 Superior Court Order or any part of it is offered at trial, then the Court will rule on any objections to its admissibility at that time. And of course, any undisputed facts stated in that order may be presented by the parties in the ordinary course of any motions for summary judgment.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Res Judicata (or collateral estoppel) Motion is DENIED, without prejudice to the parties' filing any subsequent motions for summary judgment to establish any facts, whether or not stated in the 2003 Superior Court Order, or to the presentation of evidence on those facts at trial. Applicant's Motion to Preclude

Evidence is also DENIED, as discussed above.  A telephone conference has been scheduled (see enclosed notice).

Done at Berlin, Vermont, this 13th day of July, 2010.

_____

Merideth Wright
Environmental Judge