## In re Bargain Busters, Inc. T/A Rutland Area Shopper

[287 A.2d 554]

No. 175-70

Present: Shangraw, Barney, Smith and Keyser, JJ., and Daley, Supr. J.

Opinion Filed February 1, 1972

*James M. Jeffords,* Attorney General, and *Raymond S. Fitzpatrick,* Assistant Attorney General, for Plaintiff.

*Bruce Graham,* Stowe, for Defendant.

**Keyser, J.** Bargain Busters, Inc., hereinafter called company, operates in Vermont under the trade name of The Rutland Area Shopper. Its principal business is the publication of a weekly paper distributed throughout the Rutland area which contains business advertisements for the use of shoppers and the sale of advertising space in said paper to business establishments or people in the Rutland area.

This appeal presents but a single issue, whether the activities of three certain individuals who were performing services on behalf of the appellant constitute services in employment within the meaning of the unemployment compensation (UCC) law, 21 V.S.A. § 1301(6)(B).

The Commissioner of Employment Security made an assessment against the appellant for unpaid unemployment contributions, plus interest and penalty, claimed to be due because of the employment of the three persons in question. As a result the company requested a hearing.

The hearing before the chief appeals referee concluded in an affirmance of the assessment made by the commissioner. On appeal from his decision to the Employment Security Board, the board, after hearing, on its findings of facts, affirmed the decision of the referee. The case reaches this Court on appeal by the company from the decision of the board.

The salient facts as shown by the record appear as follows. The company, in addition to other means of selling advertisements, had three individuals working for it as salesmen to solicit and procure advertisements from prospective customers in the Rutland area for inclusion in the "Shopper."

A signed agreement entered into with the company by two of the salesmen in question, in effect, covers the company's terms of employment with its agents. The signed agreements provided as follows:

> "The 'Free Agent' represents him/herself as an independent sales agent and, in no manner whatsoever is to be considered as an employee or agent of the 'Shopper' and therefore is not covered by Federal Social Security or State Unemployment Acts or any other benefits normally associated with that of an employee, nor is entitled to make any representations on behalf of the 'Shopper.'
>
> The 'Shopper' herewith grants the 'Free Agent' the right to sell its product 'advertising space' with the understanding that the 'Free Agent' will at all times strictly adhere to the procedures as established by the 'Shopper.'
>
> While free to sell other products, the 'Free Agent' agrees not to offer for sale any products conflicting or similar to that of the 'Shopper' or to represent as an

independent sales agent any concern other than the 'Shopper' whose sales might detract from marketing potential. However, the 'Free Agent' may at his/her option have other means of self-employment as long as same does not affect the sale of this product.

Any such arrangements as to customer protection, rate schedules, territories or commissions, that may be set forth by mutual agreement will be considered a part herewith.

This Agreement further provides that the 'Free Agent' during the time this Agreement is in force, or anytime thereafter, shall not directly or indirectly:

(a) Disclose to anyone any information concerning the 'Shopper's' business, including names and addresses of people that are associated with this concern, divulge sales records, or any other confidential information that in any manner would be detrimental to the 'Shopper.'

(b) As an individual or for any other party attempt to induce other people associated with the 'Shopper' to resign or cease their activities.

This Agreement shall remain in force for a period of one year from date of acceptance, and is automatically continued in effect from year to year unless otherwise terminated.

This Agreement is binding only to the extent that the 'Free Agent' agrees to complete each transaction of responsibility thus entered into, and shall notify the 'Shopper' of discontinuance intent within reasonable time to complete such transactions. This Agreement may be terminated by either party upon such notification."

The agreement contemplates that the salesmen will each in his own name as representing the company contact prospective customers and attempt to interest them in purchasing advertising space in the Shopper. Contact with the customers is made at their place of business or where they may be found but not at the appellant company's office. The salesmen are not required to work regularly but may spend as much, or as little, time as their ambition dictates. Their selling activities are not restricted to any particular locality.

The company furnished supplies and contract, or order, forms to the salesmen for use in the sale of advertising space. It controlled and set all rates and the basis of payment for the advertisements. The contracts negotiated by the salesmen are contracts between the customer and the company. The responsibility for carrying out the advertising contracts rested on the company. On Friday of each week the salesmen turned over to the company for acceptance the advertising contracts which they had obtained during the week together with any payments made to them. Sometimes the sales were billed to the customer by the salesmen, or prepaid to the salesmen; otherwise the company billed the customer. The company then paid the salesmen a commission of twenty (20) per cent on the accepted sales turned in by them regardless of whether the customer paid the company. The salesmen did not in any way indicate to a customer that they were operating independently of the company. In fact, the company's name was carried on the contract, or order, form used by the salesmen in their sales. The contracts negotiated by the salesmen were contracts between the customer and the company. The salesmen had no responsibility for the carrying out of the advertising contracts sold by them.

The business of advertising was not an established business of any one of the three salesmen and they did not sell advertising for any other company or firm. One salesman did sell Avon products and also conducted a small rubber stamp business with her husband at their home. The other two salesmen were retired and were looking for part time work at the time the company engaged them to sell advertising for its publication.

Appellant first contends that the compensation of 20% paid by the company to the salesmen is not wages. It argues that the compensation is not for services but for a given result.

21 V.S.A. § 1301 (6) (A) (i) provides in part as follows:

> "Employment, subject to the other provisions of this subdivision (6), means service within the jurisdiction of this state, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, expressed or implied."

"Wages" is defined in 21 V.S.A. § 1301(12) as being "all remuneration for services rendered by an individual, including commissions and bonuses and the cash value of all remuneration paid in any medium other than cash."

There is no dispute but that the salesmen were hired by the company to sell advertising space in the Shopper and were paid a commission on the advertising which they sold. The sales contract form furnished by the company to its salesmen were completed, or filled in, by the salesmen upon making a sale. This became a contract, or order, between the company and the customer for advertising space in the Shopper publication, the product of the company. From this it is quite evident that the purchasers of advertising were customers of the company and not of the salesmen. The salesmen turned in their sales each week and then received a check for the commission due them. Such amounts represented payment for the time and effort of the salesmen in performing a personal service for the company in the furtherance, and for the benefit, of its business.

Clearly, the commissions received by the salesmen fall squarely within the statutory definition of wages found in 21 V.S.A. § 1301(12), *supra. Gilchrist* v. *Division of Employment Security*, 48 N.J. Super. 147, 137 A.2d 29, 34 (1957), is very much in point. There the factual situation is very similar to that of the case at bar. In that case plaintiff's salesmen sold a special type of baby furniture on a door-to-door basis and were paid a commission on each sale. Also, the New Jersey statute was identical with our statute, *supra*. The court held that the commissions received by the salesmen on sales made were wages. See also *Moorman Manufacturing Co.* v. *Industrial Commission*, 241 Wis. 200, 5 N.W.2d 743, 745, 746 (1942).

The appellant says it is apparent that the contract which the company and salesmen executed contemplated results and not services. While this may have been the intention, we need only to point out that the parties are powerless to contract or bargain out from under case law or statutory enactment in an attempt to avoid the impact of the Unemployment Compensation Act.

We hold that the salesmen were performing personal services for remuneration and thus, these services are deemed employment subject to the act [21 V.S.A. § 1301(6)(A)(i)] unless the requirements of the so-called ABC test set forth in 21 V.S.A. § 1301(6)(B) are fulfilled. This language of § 1301(6)(B) reads as follows:

"(B) Services performed by an individual for wages shall be deemed to be employment subject to this chapter unless or until it is shown to the satisfaction of the commissioner that:

(i) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

(ii) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(iii) Such individual is customarily engaged in an independently established trade, occupation, profession or business."

Under the quoted provision all services performed for remuneration shall be deemed to be employment for the purpose of this law unless all three conditions (i), (ii) and (iii) are shown to coexist and to be concomitant, and the failure of one necessarily results in the relationship being one of "employment." *Vt. Securities, Inc.* v. *Unemployment Com.,* 118 Vt. 196, 200, 104 A.2d 915 (1954).

The appellant contends it exercised no control or direction over its salesmen. The evidence does not bear out this claim.

In *Hasco Mfg. Co.* v. *Maine Employ. Sec. Com'n.,* 158 Me. 413, 185 A.2d 442 (1962), the court said at 185 A.2d at 445: "Control contemplated by the statute is general control and the right to control may be sufficient even though it is not exercised." To the same effect, *Stauffer Reducing, Inc.* v. *Cummins,* 23 Ill.2d 567, 179 N.E.2d 652, 653 (1962). We find in other jurisdictions that this is the majority opinion of the courts.

Taken in their entirety with the reasonable inferences to be drawn therefrom, the facts appearing in the employment contract and the evidence concerning the relationship between the company and salesmen in all its aspects (facts concerning which we need not repeat here) justify a finding of control within the meaning of clause (i), *supra*.

Under clause (ii), it is argued that since the salesmen conducted their activities outside the office premises of the company it qualifies them to the exemption.

The company's office is located in Rutland and the area within which it solicits and accepts orders for advertising is Rutland County. The salesmen operate in this same area in selling ads for the company. Without ads for its publication the company would be in a distressful business situation.

We do not construe "outside the usual course of business" or "outside of all places of business" to mean simply the home office or headquarters of the company. The places of business include these but also as well the business territory within which it operated, in this instance, the Rutland area. This is the same area where the salesmen solicited ads as did personnel in the office of the company. In *Life & Casualty Co.* v. *Unemployment Compensation Commission*, 178 Va. 46, 16 S.E.2d 357 (1941), the court in construing a statute identical with 21 V.S.A. § 1301(6)(B)(ii) said at 16 S.E.2d at 361:

> "We do not construe 'places of business' to mean the headquarters of the employer of the office premises of the employer but of all the places of business. We think that the territory shown on the debit is one of the 'places of business' of the company . . . . The 'places of business' includes the office of the company as well as the business territory . . . ."

Passing to the third condition, the question is whether the salesmen were "customarily engaged in an independently established trade, occupation, profession or business."

Clause (iii) was construed by this Court in the *Vermont Securities, Inc.* case, *supra*. We held at 118 Vt. at 201:

"The adverb 'independently' clearly modifies the word 'established', and must carry the meaning that the trade, occupation, profession or business was established, independently of the employer or the rendering of the personal service forming the basis of the claim. The present tense 'is' indicates the individual must be engaged in such independent activity at the time of rendering the service involved. 'Customarily' means usually, habitually, regularly. *Fuller Brush Co.* v. *Industrial Comm.*, 99 Utah 97, 104 P.2d 201, 129 A.L.R. 511 (1940). The language used contemplates that one engaged in an independently established trade, occupation, profession or business has a proprietary interest therein to the extent that he can operate it without hindrance from any individual whatsoever. *Murphy* v. *Daumit*, 387 Ill. 406, 56 N.E.2d 800 (1944); *Life and Casualty Ins. Co.* v. *Unemployment Comp. Comm.*, 178 Va. 46, 16 S.E.2d 357 (1941). An established business is one that is permanent, fixed, stable and lasting. *Unemployment Comp. Comm.* v. *Collins*, 182 Va. 426, 29 S.E.2d 388 (1944)."

Two of the salesmen at the time the company employed them were retired and receiving social security benefits. The third salesman was a housewife. None of them were engaged in selling advertising for any company other than the appellant.

The rationale offered by the company as to the two retired male salesmen was that being retired they occupied a status independent of their activities on behalf of the company. This argument is quite unique but the appellant has failed to establish just how this status meets the requirement of clause (iii).

Further light is shed upon clause (iii) by the Washington Supreme Court in *Sound Cities Gas & Oil Co.* v. *Ryan*, 13 Wash.2d 457, 125 P.2d 246 (1942). In dealing with the interpretation of a statute identical to the Vermont statute, the court stated at 125 P.2d at 250:

"Had our legislature intended to exempt part-time or casual employment in the course of the employer's business, it would undoubtedly have so provided. Be that as it may, the act does not exempt casual employment, and,

if any exception is to be made, it must be made by the legislature."

We are satisfied from our review of the record that the salesmen engaged in the sale of advertising for the company were not "customarily engaged in an independently established trade, occupation, profession or business." *Vermont Securities, Inc.* v. *Unemployment Comm., supra.*

The evidence presented to the Board amply supports its findings and decision and no error has been established. The assessment was proper under 21 V.S.A. § 1301.

*Decision of the Employment Security Board is affirmed, to be certified to said Board.*