## In re Smith, Bell & Hauck Real Estate, Inc.

[318 A.2d 183]

No. 6-73

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed April 2, 1974

*Pierson, Affolter & Amidon,* Burlington, for Smith, Bell & Hauck Real Estate, Inc.

*John C. Stahl, Esq.,* of *Langrock & Sperry,* Middlebury, for Trask and Waite Realtors, Inc.

*Raymond S. Fitzpatrick, Esq.,* for Department of Employment Security.

**Keyser, J.** The applicability of Vermont's Unemployment Compensation Law, 21 V.S.A. chapter 17, to the real estate profession is before us on this appeal.

Smith, Bell & Hauck Real Estate, Inc., hereinafter called company, is a real estate broker doing business in Vermont. Its business is the solicitation, negotiation and transaction of real estate transfers between vendors and purchasers. It employs salesmen, or associates, who engage in these aspects of the business for the company and are paid entirely on a commission basis. Whether or not the company is required to make unemployment tax contributions based on these commissions is the central issue in this case.

The Commissioner of Employment Security assessed the company for unpaid unemployment contributions, plus interest and lien fee, claimed to be due because of the employment of the salesmen. The company requested a hearing before an appeals referee.

The referee affirmed the assessment. His decision was appealed by the company to the Employment Security Board. The board conducted a hearing and, on December 18, 1972, issued its decision affirming that of the referee.

The Commissioner has assessed other real estate firms throughout Vermont, and, at various stages during the proceedings below, three firms were allowed to intervene. Their participation continues during this appeal by the company to this Court.

This case is brought and relies on the law as it existed prior to the 1973 amendment to 21 V.S.A. § 1301 adding subdivisions (xvii) and (xviii) to paragraph (6)(C) and this opinion is rendered under the law before the 1973 amendment.

Although this is a case of first impression in this State in that the contesting taxpayer is a real estate firm, this Court is not without guidance. Services performed by salesmen of a security firm on a commission basis were held to be within the unemployment act as long ago as 1954 in *Vermont Securities, Inc.* v. *Vermont Unemployment Compensation Commission*, 118 Vt. 196, 104 A.2d 915 (1954). Also held within this act were services performed on a commission basis by a newspaper's salesmen of its advertising space. *In re Bargain Busters, Inc.*, 130 Vt. 112, 287 A.2d 554 (1972).

■ The same statutory provision which governed the disposition of these two cases controls here. 21 V.S.A. § 1301(6)(B) provides:

(B) Services performed by an individual for wages shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the commissioner that:

(i) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

(ii) Such service is either outside the usual course of the business for which the service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(iii) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

A company does not avoid this act simply by paying its salesmen in commissions, because under 21 V.S.A. § 1301 (12) " 'Wages' means all remuneration paid for services rendered by an individual, including commissions. . . ."

Under 21 V.S.A. § 1301(6)(B), if the company is unable to satisfy the commissioner that any one of the three conditions exists, all services performed for remuneration shall be deemed to be employment and the relationship between the company and its salesmen is one of "employment." *In re Bargain Busters, Inc., supra,* 130 Vt. at 117; *Vermont Securities, Inc.* v. *Vermont Unemployment Compensation Commission, supra,* 118 Vt. at 200. Therefore, while both the appeals referee and the board found that the company had failed to satisfy all three conditions, on review we need only find that the board's findings on any one of the three conditions was correct in order to sustain its decision.

The board concluded that the company's salesmen were not "customarily engaged in an independently established trade, occupation, profession or business" and thus the company had failed to satisfy 21 V.S.A. § 1301(6)(B)(iii). The findings underlying this conclusion were based on and supported by the evidence, as they were drawn from the

written agreement, which was an exhibit in the case, between the company and its salesmen.

Under this agreement, the salesmen undertake to obtain additional listings and customers exclusively for the company; the salesmen are responsible to the company for any commissions they receive on transfers of property in which they have an interest (except the sale or rental of their personal residences) and must deliver over promptly to the company any considerations received in connection with any transaction in which the company is involved; and all listings the salesmen obtain on their own and all those furnished them by the company are the property of the company. The company determines the amount of the commission the salesmen may charge for any services they perform.

This evidence supports the board's finding and conclusion that the condition of 21 V.S.A. § 1301(6)(B)(iii) was not satisfied. "The language used [in § 1301(6)(B)(iii)] contemplates that one engaged in an independently established trade, occupation, profession or business has a proprietary interest therein to the extent that he can operate it without hinderance from any individual whatsoever." *In re Bargain Busters, Inc., supra,* 130 Vt. at 119; *Vermont Securities, Inc.* v. *Vermont Unemployment Compensation Commission, supra,* 118 Vt. at 201. It is evident that, beyond the selling or renting of their own homes, the salesmen had no independent real estate business they could operate independently of their employer.

The company correctly argues that "[i]n the majority of the later cases in which the question has arisen, real estate salesmen or brokers working on a commission basis have been held not to be within unemployment or social security acts," Annot., 29 A.L.R.2d 751, 772 (1953), and it urges us to follow the majority view. The short answer is that its own precedents in the area of the unemployment tax carry more weight with this Court than cases from other jurisdictions.

Moreover, the majority view has not won a lopsided victory; the majority is a slight one. Courts have divided even when the unemployment acts were worded similarly. Some evidently believe that the common law relationship of master and servant still prevails, even when the statutes are similar to that of this State. Others feel that such statutes should

be liberally construed and that the term "employment" should be enlarged beyond the common law relationship. See *McClain v. Church*, 72 Ariz. 354, 236 P.2d 44, 29 A.L.R.2d 746, 749 (1951). In light of our previous decisions in the *Bargain Busters* and *Vermont Securities* cases, *supra*, this Court has followed those courts in the "liberal construction" school of thought.

The company also strives to distinguish the current situation from our two precedents. It argues that contributions should be assessed against it if it actually purchased real estate outright and then sold it to purchasers. However, since it has no proprietary interest in the real estate itself but only serves as a conduit between third person buyers and sellers, and the commissions are paid by these third persons and not the company, the argument continues, the assessment is incorrect.

The short answer to this argument might well be that the company's product line is not the real estate itself, but rather the listings, in which as we have shown above, the company, and not its salesmen, has the proprietary interest.

However, even if the company's product were the real estate, its attempted "proprietary interest" distinction is not persuasive. The petitioner in *Vermont Securities, supra*, was also a broker. The company here asserts that the petitioner there actually purchased for itself *some* of the stocks it later sold. Our reading of that decision does not yield direct support for such an assertion, but even if it were true, it is also clear that the petitioner also operated as a broker in the ordinary sense of the term. Further, this Court did not rule in that case that any commissions earned by salesmen for selling stocks the petitioner had purchased for its own supplies, with no prospective customer in mind at the time of such purchase, were without the unemployment tax act. Finally, the company has cited us to no statutory support in Chapter 17 of Title 21 that supports its attempted distinction. Indeed, such a provision would make a mockery of the chapter, since the legality of contributions would be dependent upon timing and the technical rules of passage of title.

Smith, Bell & Hauck Real Estate, Inc., was formed from, and remains a subsidiary of Smith, Bell & Hauck, Inc. The same individual is the president of both corporations, and

draws a salary from each. The board held that contributions could be legally assessed against both salaries. It also held that the company could not receive the benefit of its parent's lower contribution rate, but would be assessed at a rate of two and seven-tenths per cent under 21 V.S.A. § 1324. The company has not briefed these two issues for this appeal, and "our determination of the matter must be confined to the issues so raised by the brief of the appellants." *In re Barker Sargent Corporation*, 132 Vt. 42, 313 A.2d 669, 670 (1973). Issues not briefed are waived. *In re Appeal of Fowler*, 130 Vt. 176, 182, 288 A.2d 463 (1972); *Dindo* v. *Denton*, 130 Vt. 98, 110, 287 A.2d 546 (1972).

The three issues that we have thus far disposed of were the only issues argued before the appeals referee. There was a stipulation between the parties at the referee's hearing that these three issues were the only issues. No other issues were raised in the company's petition for a hearing, and 21 V.S.A. § 1331 provides, in pertinent part:

> Any employer against whom an assessment is made, may within fifteen days after notice thereof, file with the commissioner a petition for a hearing before a referee appointed for such purpose, *which petition shall set forth specifically and in detail the grounds upon which it is claimed the assessment is erroneous.* [Emphasis supplied.]

At the review hearing, the company introduced other issues as afterthoughts which, we feel, even as forethoughts would not change the result. Specifically, the company alleged that the administrators of the unemployment tax were guilty of selective or discriminatory enforcement because contributions had not been sought based on commissions earned by insurance salesmen. Also, it argued that the board's decision, even if valid, should only be applied prospectively. Because 21 V.S.A. § 1332 allows the record to be supplemented at the hearing before the board, we will not hold that these issues were raised too late, as in *Dike* v. *McCormick*, 128 Vt. 349, 350, 264 A.2d 769 (1970). However, the decision of the board to make no findings on these secondary issues is indicative of their lack of persuasive power.

The company argues that, if insurance firms are without the act, real estate firms should also be outside the act's scope; conversely, if insurance firms are within the act, then real estate firms should not be assessed until such time as the commissioner commences to assess the insurance companies. Noteworthy at the outset is the fact that no representative of the insurance industry was a party at these proceedings to argue its case for exclusion.

It is a well known principle that, though a statute is valid on its face, the manner of its enforcement may be invalid if found to be unconstitutionally discriminatory. *Vermont Woolen Corp.* v. *Wackerman*, 122 Vt. 219, 227, 167 A.2d 533 (1961); *Clark* v. *City of Burlington*, 101 Vt. 391, 411, 143 A. 677 (1928). But the challenge to the enforcement practices must have some underpinnings of relevance.

> [O]ne who challenges the validity of taxation, on the ground that it violates the equal protection clause of the Fourteenth Amendment cannot rely upon theoretical irregularities, so such as do not affect him, but must show that he is himself unfavorably affected.

*Clark* v. *City of Burlington, supra,* 101 Vt. at 412. If the insurance industry were within the act, the company argues, because of the pooling arrangement of the act, real estate firms' contributions *might* decrease because insurance firms' contributions *might* be high, and withdrawals from the pool by unemployed insurance salesmen *might* be low. This argument is theoretical.

Finally, the following language, although from a lower level court, has been oft-cited, and is instructive here.

> [E]ven if the enforcement of a particular law is selective, it does not necessarily follow that it is unconstitutionally discriminatory. Selective enforcement may be justified when the meaning . . . of the law is in doubt and a test case is needed to clarify the law or to establish its validity . . . . It is only when the selective enforcement is designed to discriminate against the persons prosecuted, without any intention to follow it up by general enforcement against others, that a constitutional violation may be found.

*People* v. *Utica Daw's Drug Company,* 16 App. Div.2d 12, 225 N.Y.S.2d 128, 136 (1962). See also *Bianco* v. *Town of Darien,* 157 Conn. 548, 254 A.2d 898 (1969), where the lower court's finding that every residence on the same street as the plaintiffs was in violation of one or more local ordinances did not entitle the plaintiffs to an injunction against the town's enforcement of a zoning ordinance against the plaintiffs. "For the plaintiffs to prevail, they must 'show a pattern of discrimination consciously practiced'." *Id.* 254 A.2d at 904.

The record in the present case supports an inference that, had 21 V.S.A. § 1301(6)(C)(xvii) not been enacted by the 1973 amendment, the commissioner would have commenced to assess insurance firms. At any rate, the company here has not shown intentional discrimination on the commissioner's part.

As its final briefed issue, the company urges us, should we sustain the board's decision, to limit its effect to December 18, 1972, the date of the board's decision, and thereafter. It does not allege that the commissioner attempted to assess for a period greater than the three years allowed by 21 V.S.A. § 1329(e); rather it contends that the board's decision should not even be applied retroactively to the statutorily allowed period.

■ We cannot perceive any reason for a prospective ruling in this case. Our decisions in the *Vermont Securities* and *Bargain Busters* cases, *supra,* were not prospective. This decision is controlled by principles set forth in those cases; we announce no new standards herein not cognizable by the company, as was the situation in *Aiken* v. *Malloy,* 132 Vt. 200, 315 A.2d 488 (1974). We nullify no prior administrative ruling exempting the company. *Cf. Institute for Trend Research* v. *Griffin,* 101 N.H. 255, 139 A.2d 628 (1958). Finally, we have shown that reliance by the company on the common law definition of "employment", the majority rule among other jurisdictions, and the theory of discriminatory enforcement was misplaced.

*Judgment affirmed.*