2015 VT 85











Bradford’s Trucking, Inc. v.
Department of Labor (2014-230)

 

2015 VT 85

 

[Filed 19-Jun-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 85
 
 


 


 
 
 No. 2014-230
 
 


 


 
 
 Bradford’s Trucking, Inc.
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Employment Security Board 
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Department of Labor
 
 
 January Term, 2015
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Mary
 Anne Gucciardi and Michael Rogers, Board Members
 
 
 
 
  
 
 


Eileen Bradford, Pro Se, Ferrisburg, Plaintiff-Appellant.

 

Dirk Anderson, Montpelier, for Defendant-Appellee.

 

 

PRESENT:    Reiber, C.J., Dooley, Skoglund,
Robinson and Eaton, JJ.

 

 

¶ 1.            
EATON, J.   Employer Bradford’s Trucking, Inc. appeals
from an Employment Security Board ruling that certain individuals were
employees of the company for purposes of assessing unemployment taxes.  We
affirm.

¶ 2.            
Employer is in the business of delivering sand and gravel to companies
around Vermont.  It is based in Ferrisburgh, and
generally delivers to other businesses in central Vermont.  It has had as
many as nine employees, but at the time of these proceedings claimed to have
only four.  

¶ 3.            
In June 2012, the Department of Labor assessed employer for unpaid
unemployment compensation contributions for several of its workers. 
Employer appealed with respect to three of the individuals in question. 
Following an evidentiary hearing, an administrative law judge (ALJ) sustained
the Department’s assessment of contributions.  Employer then appealed to
the Employment Security Board, which adopted the ALJ’s findings and affirmed
its decision.

¶ 4.            
The ALJ’s findings with respect to the three workers may be summarized
as follows.  Eileen Bradford has worked for employer, a family-owned
company, since it started in 1989, except for a four-year period between 2004
and 2008 when she was out of state.  Her son is the company’s current
president, and she has served for years as its secretary/treasurer, a position
she occupied during the years in question for purposes of this appeal.  Ms.
Bradford did the  bookkeeping and payroll for
employer since its inception.  

¶ 5.            
Ms. Bradford testified that, in June 2008, she opened a bookkeeping
business.  She did not register the business with the Secretary of
State.  She testified that she had three clients, including employer, but
that one stopped employing her in 2009, and another in
2010.  She testified that she had no written agreements with the other two
companies and did not send them invoices.  Ms. Bradford was paid $25 per
hour by employer for her bookkeeping services.  

¶ 6.            
In 2010, Ms. Bradford started working full time for another company, and
consequently hired a friend, Neil Swenor, to help
with employer’s books.  Swenor was then working
full time as a bookkeeper at a meat market and was looking to supplement his
income.  He worked for employer for about a year, working out of Ms.
Bradford’s home in Vergennes.  He usually worked about seven to ten hours
per week, for $14 per hour.  Ms. Bradford signed Swenor’s
checks on behalf of employer.  When Swenor left
at the end of 2011, Ms. Bradford hired Kelsey Reed, her son’s fiancée, to
replace him.  Reed ran a daycare business.  She worked for employer
from January to August 2012, for approximately the same hours and rate of pay
as Sweenor, and also worked out of Ms. Bradford’s
home.  After Reed left, Ms. Bradford resumed doing all of the payroll and
bookkeeping services for employer.  

¶ 7.            
To resolve employer’s appeal, the ALJ and the Board applied
21 V.S.A. § 1301(6)(B).[1]  Under this provision, all workers
who receive wages are presumed to be employees, and the burden is on the
employer to rebut this presumption by showing that the workers “meet all three
elements of the statutory exception commonly known at the ABC test.”  Fleece
on Earth v. Dep’t of Emp’t & Training,
2007 VT 29, ¶ 7, 181 Vt. 458, 923 A.2d 594.  “The failure
of any one part of the test compels the conclusion that an employer-employee
relationship exists.”  Id.  The three elements of the
exception are: (1) the worker “has been and will continue to be free from
control or direction over the performance of such services”; (2) “[s]uch service is either outside the usual course of the
business for which such service is performed, or . . . such
service is performed outside of all the places of business of the enterprise
for which such service is performed”; and (3) “[s]uch
individual is customarily engaged in an independently established trade,
occupation, profession or business.”  21 V.S.A. § 1301(6)(B)(i), (ii), (iii).

¶ 8.            
The Board affirmed the ALJ’s finding that employer had met its burden as
to the first part of the test, noting that Ms. Bradford was a corporate officer
and therefore generally free from control and that employer exercised only
“limited control” over Swenor’s and Reed’s payroll
work.    

¶ 9.            
The Board also agreed with the ALJ’s finding, however, that employer had
not met either of the independent elements of the second part of the test with
respect to Bradford, Swenor or Reed.  They
concluded, in this regard, that bookkeeping was “integral” to and a “necessary
part of doing business” for employer, and therefore was not “outside the usual
course” of employer’s business, and further concluded that the work was not
performed “outside of all the places of business” of employer.    

¶ 10.         Finally,
the Board affirmed the ALJ’s finding that, while Ms. Bradford had established
that she met the third part of the test because she was “providing bookkeeping
services” for at least a couple of years, neither Swenor
nor Reed was engaged in such a business when they worked for employer. 
Thus, because employer had failed to demonstrate that Ms. Bradford, Swenor, or Reed met all three of the statutory criteria,
the assessments were sustained.  This appeal followed.

¶ 11.         Our
review is deferential.  We will affirm the Board’s findings of fact unless
clearly erroneous, and its conclusion of law if fairly and reasonably supported
by the findings.  Bouchard v. Dep’t of Emp’t & Training, 174 Vt. 588, 589, 816 A.2d 508,
510 (2002) (mem.).  

¶ 12.         Employer
challenges the Board’s conclusion, under the second part of the statutory test,
that the individuals in question were not providing a service “outside the
usual course of the business.”  Employer argues that bookkeeping is not
part of the “usual” business of hauling gravel, and that the standard employed
by the Board—whether the service provided is “integral” or “necessary” to the
business—is not contained in the statute and is so broad as to apply to any
outside service. 

¶ 13.         We
need not address this claim, however, as the record
demonstrates that none of the individuals in question met other elements of the
statutory test.  See Fleece on Earth, 2007 VT 29, ¶ 7 (noting that
“failure of any one part of the test compels the conclusion that an
employer-employee relationship exists”).  Thus, as summarized earlier, the
record evidence here  supports the Board’s
conclusion that neither Swenor nor Reed was
“customarily engaged in an independently established” business, as required by
third part, or Part C of the statutory test.  21 V.S.A. § 1301(6)(B)(iii).  This standard requires that employer show
that the business in question was “established, independently of the employer
or the rendering of the personal service forming the basis of the claim”; that
the individual was engaged in the independent business “at the time of
rendering the service”; that the individual was “customarily” or “regularly” so
engaged; and that the business was “established,” meaning “one that is
permanent, fixed, stable and lasting.”  Vt. Secs.,
Inc. v. Vt. Unemployment Comp. Comm’n,
118 Vt. 196, 201, 104 A.2d 915, 917 (1954); accord In re Bargain
Busters, Inc., 130 Vt. 112, 119, 287 A.2d 554, 559 (1972). 

¶ 14.         Employer
has not carried its evidentiary burden under this standard.  As noted, the
ALJ found, and the undisputed record evidence showed, that Reed “did have an
independently established trade, but it was not bookkeeping, but
daycare.”  Furthermore, while was it was clear that Swenor
had worked as a bookkeeper, it was equally clear that his service was as an
employee, not as the proprietor of an independently established business. 
Accordingly, employer failed to satisfy the third prong of the ABC test as to
these individuals.

¶ 15.         As
for Ms. Bradford, the record is equally deficient for purposes of meeting the
first part of the statutory test, requiring that employer demonstrate that the
individual “has been and will continue to be free from control or direction
over the performance of such services.”  21 V.S.A. § 1301(6)(B)(i). In this regard, the
record showed, and the ALJ found, that, during all relevant time periods,
Bradford served as the secretary/treasurer of the corporation.  While the
ALJ found that Bradford did not have many duties in this capacity, “primarily
submitting minutes of the annual meeting, and arranging loans as needed,” the
record showed that as a corporate officer she also effectively managed all
bookkeeping services for the corporation, which she performed herself for many
years.  When Bradford formed her own bookkeeping service in 2008, she
exercised that oversight responsibility by hiring Swenor,
and then Reed, to do the corporation’s bookkeeping, trained them, and signed
their paychecks.  When her own business faltered, Bradford resumed doing
the company’s books.  

¶ 16.         Thus,
as a corporate officer Bradford effectively managed and directed herself or others performing bookkeeping services on behalf
of employer, and therefore did not satisfy Part A of the statutory test
requiring freedom from the employer’s “control or direction.”  21 V.S.A.
§ 1301(6)(B)(i); see,
e.g., Provident Inst. for Sav. in
Jersey City v. Div. of Emp’t Sec., 161 A.2d 497,
501-02 (N.J. 1960) (noting that, while a corporation is a “separate and
independent entity,” services “in which the [corporate] officer actively
participates would seem to constitute the rendition of a service for and on
behalf of the corporation”); see also Fuller Butane Co. v. State, 665
So. 2d 701, 706 (La. Ct. App. 1995) (observing that “the ‘right to control’
test is of little value . . . where the chief corporate officer and the
individual claiming to independent contractor status are one and the same
person”). Although the ALJ reached a different legal conclusion, our review in
this regard is nondeferential.  See Fleece on
Earth, 2007 VT 29, ¶ 26 (“While the Court owes deference to the
Board, we are not bound by an erroneous construction of the law.”).[2]  Accordingly, we discern no basis to
disturb the judgment.

Affirmed. 


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 


 














[1] 
This section provides: 

 

  Services
performed by an individual for wages shall be deemed to be employment subject
to this chapter unless and until it is shown to the satisfaction of the
Commissioner that:

 

  (i)  Such individual has been and will continue to be
free from control or direction over the performance of such services, both
under his or her contract of service and in fact; and

 

  (ii) 
Such service is either outside the usual course of the business for which such
service is performed, or that such service is performed outside of all the
places of business of the enterprise for which such service is performed; and 

 

  (iii) 
Such individual is customarily engaged in an independently established trade,
occupation, profession or business.

 

21 V.S.A. § 1301(6)(B).  





[2]
 We note that federal employment-tax law generally provides that a
corporate officer is an employee of the corporation, see 26 U.S.C. §§ 3121,
3306; 26 C.F.R. § 31.3306(i)-1(e), but there is a
split in its interpretation, one approach holding that a corporate officer may
enjoy a “dual capacity,” performing some services for the company in other than
his or her official role, Idaho Ambucare Ctr.,
Inc. v. United States, 57 F.3d 752, 756 (9th Cir. 1995), the other
incorporating a  “strict ‘substantial services’ test,” which assumes that
an officer performing any nonminor service is an employee
without considering the role in which such services are performed. Id. 
We need not consider this issue here, however, as
Bradford’s role remained consistently that of an employee under the employer’s
direction in performing and managing the company’s bookkeeping services.