VERMONT SUPERIOR COURT
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

ENVIRONMENTAL DIVISION
Docket No. 25-ENV-00069



| North Hollow Road Subdivision Amendment | MERITS DECISION |
|---|---|

This is an on-the-record appeal by Vermonty, LLC (Appellant) of an August 14, 2025 Town of Stowe (Town) Development Review Board (DRB) decision approving an application submitted by the Donaldson Family Trust, through Trustees Mark and Rebecca Donaldson (Applicant) for a subdivision amendment to construct a 3-bedroom single-family residence at 1243 North Hollow Road, Stowe, Vermont (the Property). Appellant appealed that decision to this Court.

In this matter, Appellant is represented by Michael J. Tarrant II, Esq. and Nicholaes AE Low, Esq. Applicant is represented by Alexander J. LaRosa, Esq. The Town has appeared and is represented by David W. Rugh, Esq. and Zachary I. Handelman, Esq.

## Legal Standard

In an on-the-record appeal, the Court considers only the decision below, the record made before the municipal panel, and the briefs submitted by the parties. In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Nov. 9, 2011) (Durkin, J.). In such an appeal, the Court does not take new evidence or make its own factual determinations. Instead, the Court reviews the municipal panel's factual findings to determine whether the decision below "explicitly and concisely restate[s] the underlying facts that support the decision." See 24 V.S.A. § 1209(a)-(b).

The Court will only affirm factual findings if they are supported by substantial evidence in the record below. See In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 7, 186 Vt. 586. The Court does not assess the credibility of witness testimony or reweigh conflicting evidence in the record. See Devers-Scott v. Off. of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248. The Court simply looks to whether the record includes relevant evidence that a "reasonable person could accept . . . as adequate" support for the factual findings." Id. (quoting Braun v. Bd. of Dental Exam'rs, 167 Vt. 110, 114 (1997)). When we review an appeal on-the-record, the Court reviews legal determinations de novo. In re P&R Assoc., LLC, No. 74-6-12 Vtec, slip op. at 3–4 (Vt. Super. Ct. Envtl. Div. Feb. 1,

2013) (Walsh, J.). Our review is additionally limited to those issues raised in the Appellant's Statement of Questions. See V.R.E.C.P. 5(f).

**Statement of Questions**

Appellant has filed a 12-Question Statement of Questions. They ask:

1. Did the DRB err in concluding that Lot 2 from the underlying subdivision permit, issued in 2020, was a "deferred" lot that could be reviewed five years later without complying with the Stowe Club Highlands / Hildebrand test?

2. Did the DRB err in failing to conduct the necessary Stowe Club Highlands / Hildebrand analysis?

3. Should the Court deny the application because it fails to comply with Stowe Club Highlands / Hildebrand analysis?

4. Did the DRB err in determining that, under Subdivision Regulation Section 5.1(1) there is no evidence in the hearing record to indicate that the proposal will have an undue adverse impact?

5. Did the DRB err in determining Zoning Regulations Section 9.5, Standards 2, 3, and 12 are not applicable to the Project?

6. Did the DRB err in concluding that there will be no undue adverse impact under Zoning Regulations Section 9.5, Standard 4, and that the Project complies with Standard 4?

7. Did the DRB err in concluding that the application complies with Section 5.1(3) of the Subdivision Regulations?

8. Did the Applicant fail to provide sufficient evidence regarding the location and dimensions of the stream on the property to support a conclusion that the Project complies with Zoning Regulations Section 9.5, Standard 4?

9. Did the Applicant fail to provide sufficient evidence, and did the DRB fail to make sufficient findings, to support a finding and conclusion that a 50' buffer from the stream on the property is sufficient to comply with Zoning Regulations Sections 3.10 and 9.5, Standard 4 (see Guideline 4.4) and also Subdivision Regulation Section 5.1(2)?

10. Did the Applicant fail to provide sufficient evidence to support a finding that the Project will not have an undue adverse impact on any significant wildlife habitat and natural communities under Zoning Regulations Section 9.5, Standard 4 and also Subdivision Regulation Section 5.1(3)?

11. Did the Applicant fail to provide sufficient evidence regarding location of very steep slopes, including slopes over 15% grade to support a conclusion that the Project complies with Zoning Regulations Section 9.5, Standard 4?

12.     Did the DRB err in concluding the Project complies with Section 5.2 of the Subdivision Regulations?

Statement of Questions (filed Sept. 4, 2025).

**Factual Background**

Applicant owns the Property. The Property was created by a subdivision approved by the DRB in 2020. At the time, the Property was identified as "Lot 2." The 2020 subdivision approval stated that "[a]dditional review by the DRB is required prior to the issuance of any zoning permit for development on Lot 2." Record at 044. The application presently on appeal seeks approval to develop Lot 2 with a 3-bedroom single family home with a driveway and septic system. Clearing work will be required to construct the project.

The Property is ±7.06 acres. It is located within the Rural Residential 5 (RR5) District and the Ridgeline and Hillside Overlay District (RHOD) as those terms are defined by the Town of Stowe Zoning Regulations (the Zoning Regulations). The application is also subject to the Town of Stowe Subdivision Regulations, effective July 22, 2012 (the Subdivision Regulations).

There is a mapped stream along the Property's northern boundary and the eastern portion of the Property. The project proposes a 50-foot setback from the stream. The Property is mostly steep slopes greater than 15% as depicted by the Agency of Natural Resources (ANR). The building site for the single-family home is on slopes between 5 and 20%.

The DRB held public hearings on the application in April and June 2025 and a site visit on June 17, 2025. Appellant owns neighboring property. Appellant's members submitted a letter to the DRB dated May 23, 2025 and co-signed by other neighbors, the Orrs. Record at 068-73. Appellant did not attend any DRB hearings or submit any comments to the DRB beyond the letter. Ms. Orr participated in two of the public hearings DRB hearings. Appellant timely appealed to this Court.

**Discussion**

**A. Preservation**

As a threshold matter, Applicant challenges whether Appellant has adequately preserved the issues within its Statement of Questions and briefing on appeal. Appellant asserts that issue preservation is not relevant to this appeal. The Court disagrees with Appellant.

This Court is governed by the Vermont Rules of Appellate Procedure (V.R.A.P.) when hearing appeals on-the-record. See V.R.E.C.P. 5(h); see also In re Ferra & Fenn Gravel Pit Application, No. 159-9-10 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Sept. 29, 2011) (Durkin, J.). Briefs submitted in such appeals must conform to V.R.A.P. 28. See In re Ledgewood Condo PUD CU Amendment

Application, No. 150-7-07 Vtec (Vt. Envtl. Ct. Aug. 26, 2008) (Durkin, J.) (citing In re Miller, No. 59-3-07 Vtec, slip op. at 7 (Vt. Envtl. Ct. Nov. 5, 2007) (Durkin, J.)). V.R.A.P. 28(a)(4) requires an appellant's brief to include in its argument "the issues presented, how they were preserved . . . with citations to the authorities and parts of the record on which the appellant relies."

The purpose of the preservation rule "is to ensure that the original forum is given an opportunity to rule on an issue prior to [appellate] review." In re White, 172 Vt. 335, 343 (2001) (emphasis added). For an issue to be preserved, "a party must present the issue to the [body below] with specificity and clarity in a manner which gives the [body] a fair opportunity to rule on it."[1] Pratt v. Pallito, 2017 VT 22, ¶ 16, 204 Vt. 313 (quotation omitted).

Recently, this Court has recognized that some aspects of the preservation rule may be flexible in the context of on-the-record appeals from appropriate municipal panels to this Court in zoning matters. In re Stowe Country Club, No. 25-ENV-00021, slip op. at n. 3 (Vt. Super. Ct. Envtl. Div. Mar. 26, 2026) (Walsh, J.). For example, in Stowe Country Club, the Court declined to adopt an application of V.R.A.P. 28 to this Court that would require a party to submit legal briefing to preserve a legal interpretation theory on appeal. Id. Instead, the Court looked to various witness testimony provided and cited to determine if the theory was sufficiently understandable to be considered preserved. Id. at 4—5. Thus, issue preservation is directly applicable to this Court in on-the-record appeals, though with slight flexibility to recognize the realities of the process before an appropriate municipal panel.

Applicant asks the Court to go a step further and state that issue must be preserved by the appellant and not by another party.[2] Appellant submitted a letter to the DRB co-signed by its neighbors, the Orrs. See Record at 068-73. That letter does not include reference to a number of matters raised in its Statement of Questions or issues raised on appeal. The Court need not rule upon whether this deficiency limits Appellant's scope of preserved issues because, even if the Court looks

---

[1] While these cases relate to issue preservation in the appellate context, the general concept of presentation to an appropriate municipal panel in the first instance is also relevant to the general requirement that a party participate in an appropriate municipal panel process to appeal to this Court under 24 V.S.A. § 4471(a). This Court has interpreted the purpose of the participation requirement of § 4771(a) is "to require that an appellant bring information before the municipal panel as a way of helping that panel reach its decision in the first instance." In re Verizon Wireless Barton Permit, No. 133-6-08 Vtec, slip op. at 6 (Vt. Envtl. Ct. May 20, 2009) (Durkin, J.) aff'd 2010 VT 62. Thus, consideration of the presentation of issues to an appropriate municipal panel in the first instance is generally an aspect of appeals in this Court.

[2] To the extent there is a dispute about Appellant's participation, this Court has held that letters sent to a municipal panel or a town's planning or zoning offices in advance of a hearing satisfy the participation requirement of § 4771(a). See In re Caleb Temple DBA Kirby MTN Landscaping, No. 107-8-11 Vtec, slip op. at 1-2 (Vt. Super. Ct. Envtl. Div. Sept. 5, 2012) (Walsh, J.). Thus, Appellant participated by co-signing a letter with its neighbors.

4

at the record as a whole, neither Appellant nor another party raised issues related to a number of matters within Appellant's Statement of Questions.[3] Thus, the Court must conclude that those issues are outside the scope of its review in this case because the DRB never had the opportunity to rule upon the issue before appellate review in this Court. It would therefore violate the principles applicable to issue preservation and, more generally, participation, to allow Appellant to raise them in the first instance on appeal without even discussing alleged challenges to the application's compliance with the cited provisions before the DRB.

First, in considering whether Question 4 was preserved below, the Court can discern no discussion, within Appellant's letter or other locations within the testimony, that indicates that Appellant or another interested party, such as the Orrs, believed the application did not comply with Subdivision Regulations § 5.1(1), which relates to the character of the land for development. While Subdivision Regulations § 5.1(1) includes a discussion of an undue adverse effect on the environment, all of Appellant and interested party's testimony was related to and cited other provisions of the Subdivision and Zoning Regulation, notably Zoning Regulations § 9.5.[4] Question 4 is therefore **DISMISSED** as not properly before the Court.

Second, Question 5 challenges the DRB's conclusion that Zoning Regulations § 9.5 Standards 2, 3, and 12 were not applicable to this application. These Standards concern timber harvesting and management practices developed by the Department of Forest, Parks and Recreation (Standard 2), review of the DRB of pre-development forest management activities (Standard 3), and the minimum area for lots in the underlying district (Standard 12). Appellants' letter contains no reference to these provisions, despite specifically citing other Zoning Regulations. Testimony provided by other neighbors does not indicate that there was a belief that the application should have complied, or did not comply, with any of these Standards. Thus, Question 5 is **DISMISSED**.

Third, Questions 7 and 10 concerns Zoning Regulations § 9.5, Standard 4 and Subdivision Regulations § 5.1(3). Section 5.1(3) addresses mapped significant wildlife habitat areas and § 9.5, Standard 4 partially does as well. Appellant's briefing on these Questions is related to wildlife habitat. Again, even taking an expansive review at comments submitted both by Appellant and by other

---

[3] Appellant has cited to no provision of the record below that preserves any aspect of the matters raised on appeal. Thus, the Court has taken it upon itself to review the record. This is atypical and the Court does not seek to adopt it as a practice. Instead, this approach is in recognition to the fact that the concept of issue preservation in this Court has not been thoroughly addressed and, in light of that, to ensure complete review by this Court in this matter.

[4] To the extent it was properly preserved, this Question is likely answered by the Court's conclusions on the remaining Questions below.

neighbors, compliance with this provision or concerns related to wildlife were not raised before the DRB. While Zoning Regulations § 9.5, Standard 4 is specifically cited within Appellant's letter to the DRB, it is directly related to slopes and flooding impacts. There is no discussion of wildlife habitat or wildlife impacts. Thus, Questions 7 and 10 are **DISMISSED**.

The Questions that therefore remain before the Court are Question 1 through 3, 6, 8, 9, 11, and 12.[5]

### B. Remaining Issues

#### a. <u>Stowe Club Highlands</u>/<u>Hildebrand</u>

Through Questions 1 through 3, Appellant generally argues that the DRB erred because it failed to conduct the requisite <u>Stowe Club Highlands</u>/<u>Hildebrand</u> analysis related to permit amendment applications.

<u>Stowe Club Highlands</u>, 166 Vt. 33 (1996), applicable in the municipal context through <u>In re Hildebrand</u>, 2007 VT 5, is a potential threshold barrier in a permit amendment application. In order for a municipal permit amendment application to be considered on the merits, Applicant must show either that the condition they seek to amend was not critical to the issuance of the permit, *see* <u>Lonie Parker dba Porky's Bkyd BBQ SP & NOV,</u> No. 6-1-20 Vtec, slip op. at 30 (Vt. Super. Ct. Envtl. Div. Nov. 17, 2020) (Walsh, J.), or, if it was, it must go through relevant factors. <u>Stowe Club Highlands,</u> 166 Vt. 33, 38 (identifying factors); <u>Hildebrand,</u> 2007 VT 5, ¶13 (upholding the Environmental Court's application of these factors in a zoning case). Applicant must prove to that the need for flexibility outweighs the interests of finality in their case under the relevant factors. *See* <u>Clark & Castle Final Plan Amendment,</u> No. 52-4-19 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. May 22, 2020) (Durkin, J.) (citation omitted). Here, the amendment application before the Court was contemplated by the 2020 approval such that application of the flexibility/finality factors is not needed.

There can be no legitimate dispute that the Property's compliance with relevant standards was deferred. In fact, Appellants' letter to the DRB recognizes that the DRB "deferred review" on relevant standards when it approved the lot in 2020. See Record 070. While the 2020 permit is not in the record, there is substantial evidence in the record to support the DRB's finding that "[a]ny future clearing or development of Lot 2 [the Property] shall require additional review by the DRB." DRB

---

[5] Question 9 contains references to Zoning Regulations § 3.10 and Subdivision Regulations § 5.1(2). Neither provision is cited in the Appellant's letter or testimony, but the letter specifically references a 50-foot setback from streams, addressed in Zoning Regulations § 3.10. The three provisions also substantially overlap as it relates to the stream such that the issue is preserved.

Decision at 3, 6.[6] It is also clear that the DRB considered the prior permit based on this reference and other citations from Applicant. Thus, the 2020 subdivision approval explicitly contemplated a future application for some scope of development or clearing of the Property. It also specifically contemplated that whatever future application the DRB received would be reviewed for compliance with relevant regulations at that time. It is clear on its face that the previous permit contemplated amendment and further development of this parcel. Thus, the present application does not seek amendment of a critical permit condition.

While the decision below does not contain a complete analysis of this, this Court reviews the legal conclusions de novo. To the extent that the decision lacks a large analysis of Stowe Club Highlands/Hildebrand, it is clear that it is intrinsic given reference to the prior DRB decision and the fact that it considered the application on the merits. Further, in light of the above de novo review of the DRB's legal conclusions, a lengthy permit amendment analysis would not be required in this circumstance, when the pending application was contemplated by the subdivision permit it seeks to amend. The Court fails to understand why a remand to conduct a Stowe Club Highlands/Hildebrand analysis would be needed when the underlying permit that Applicant seeks amendment of contemplates an application like the one before the Court in this matter.[7]

It is also for this reason that this case is not analogous to In re Evans Clearing Limits, as cited by Appellant. See. No. 21-ENV-00035 (Vt. Super. Ct. Envtl. Div. July 29, 2022) (Durkin, J.). In that matter, the Court addressed the Town's motion for remand to conduct a Stowe Club Highlands/Hildebrand analysis. Id. Evans Clearing Limits concerned a property that had specifically limited in previous permits the areas on the subject property that could be cleared of natural vegetation (i.e., clearing limits). Id. at 1. The applicant in that case sought after-the-fact approval to specifically alter those imposed clearing limits. Id. at 1-2. Contrary to Appellant's argument, there are no specific clearing limits imposed on the Property in this case. Instead, development was not approved at in the 2020 subdivision and approval of such development was specifically contemplated with by that

---

[6] The Court cites to the PDF page of this document.

[7] Appellant presents no assertion that the application would have failed the Stowe Club Highlands/Hildebrand analysis. In this respect, it mostly argues that the record is unclear. The 2020 permit related to Lot 2, however, is not disputed and supported by the record such that the record on this issue is sufficiently established and remand would be inappropriate.

permit.[8] Thus, the cursory reference to the prior permit is enough to satisfy its requirement to consider Hildebrand before reaching the merits of the application in this case.[9]

Thus, the Court answers Questions 1 through 3 in the negative concluding that the application before the Court was contemplated by the subdivision permit that created the Property.

### a. Question 6, 8, 9 and 11

Question 6 asks: "Did the DRB err in concluding that there will be no undue adverse impact under Zoning Regulations Section 9.5, Standard 4, and that the Project complies with Standard 4?"[10] The remaining aspect of Question 6 appears to address steep slopes and the relationship of the Property to the stream and/or stream buffer. Questions 8 and 11 ask whether Applicant provided sufficient evidence regarding the stream buffer (Question 8) and steep slopes (Question 11) to support the DRB's conclusion that the application complied with Zoning Regulations § 9.5, Standard 4. Question 9 poses a related issue, whether Applicant provided sufficient evidence to support a finding and conclusion, and whether the DRB made sufficient findings, relevant to the 50-foot buffer from the steam on the Property sufficient to comply with Zoning Regulations §§ 3.10, 9.5 Standard 4 and Subdivision Regulations § 5.1(2).

Appellant argues that the DRB erred in concluding that application complied with Zoning Regulations § 9.5, Standard 4 because it had "scant analysis or findings on these issues . . .."

With respect to Zoning Regulations § 9.5 Standard 4, addressed by all four Questions, those factual findings are supported by substantial evidence in the record. Applicant provided a site plan completed by an engineer. The site plan was further supplemented by testimony and a site visit. At no point did Appellant or other neighbor property owners challenge the sufficiency of the site plan's depiction of the 50-foot stream buffer. Further, the site plan depicts 1-foot contour lines at the Property. Applicant also submitted elevations of the Property depicting slope. Staff notes and testimony on slope assist in understanding these site plans. See Record at 0079. It is clear that Applicant provided substantial evidence to demonstrate these aspects of the Property and the application and there is no evidence in the record to support a finding that the Property contains

---

[8] Further, the DRB in Evans Clearing Limits also did not explicitly conduct a Stowe Club Highlands/Hildebrand analysis but instead briefly noted the application's non-compliance with the factors before denying the application on the merits. Id. at 2. Despite this, the Court still declined to remand to the Town's DRB for a complete review under this analysis for other reasons. Id. at 4.

[9] The Court notes that clear and complete legal analysis should always be the goal when conducting on-the-record review. While the analysis is sufficient in this instance, all parties, including this Court on appeal, benefit from a complete understanding of the DRB's reasoning.

[10] First, to the extent that Question 6 addresses wildlife habitat, for the same reason as set forth above with respect to other wildlife-related Questions, that issue has not been preserved and is not before the Court at this time.

slopes greater than 20%, particularly where the building site is located. To the extent that Appellant requests that this Court reweigh the evidence in the record to reach an alternative finding and/or conclusion, the Court cannot do so. See Devers-Scott, 2007 VT 4, ¶ 6.

Further, the Court finds that the DRB made sufficient factual findings based on this record to support its legal conclusions.

To the extent that Appellant challenges the DRB's legal conclusions, it presents no argument that the DRB misinterpreted a provision of the applicable regulations. To the extent that it does, that argument is that the DRB had "scant analysis . . . on this issue" of compliance with Zoning Regulations § 9.5, Standard 4. When conducting on-the-record review the Town follows the Municipal Administrative Procedures Act (MAPA) and corresponding decisions must "be in writing and shall separately state the findings of fact and conclusion of law." 24 V.S.A. § 1209(a). With respect to the conclusions of law, MAPA requires that "[c]onclusions of law shall be based on the findings of fact." 24 V.S.A. § 1209(c). The DRB's decision is in writing and contains separately stated findings of fact and conclusions of law. The DRB's decision therefore complies with MAPA requirements. The Court finds no error with the sufficiency of the legal analysis.

To the extent that Appellant argues that the DRB erred in its application of Zoning Regulations § 9.5, Guideline 4.4, the Court concludes that it did not. Again, Appellant presents no specific argument as to misapplication or interpretation. This provision states a guideline that it is a "[a]general rule is to keep a fifty (50') foot setback from streams on lands with less than fifteen (15%) percent slop, and on steeper slopes the buffer distance should be increased as the slope increases." Zoning Regulations § 9.5, Guideline 4.4. For the reasons set forth above, the record supports the DRB's finding that there is a 50-foot buffer from the stream. Appellant concedes this depiction and simply notes that the buffer "may not" comply with the Zoning Regulations. Importantly, Zoning Regulations § 9.5(3) specifically states that the "[g]uidelines are instructive in nature. . . . The options for compliance are not limited to the guidelines listed, but the applicant can use the list to aid in the design process." Thus, the Court finds no error in the DRB declining to impose a greater stream buffer, even assuming the slopes in this area are greater than 15%.

Thus, the Court finds no error with respect to Questions 6, 8, 9[11] and 11.

---

[11] Question 9 also addresses Subdivision Regulations § 5.1(2). Beyond a quotation to the Question itself, Appellant's briefing presents no argument with respect to § 5.1(2). It is therefore both inadequately briefed and waived. In re Smith, Bell & Hauck Real Estate, 132 Vt. 295, 300 (1974; In re Lawrence Site Plan Approval, No. 166-10-10 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Oct. 17, 2011) (Durkin, J.). Further, Subdivision Regulations § 5.1(2) addresses undue adverse impacts on scenic natural resources, including streams. Thus, for the same reasons as set forth above with

9

### b. Question 12

Question 12 asks: "Did the DRB err in concluding the Project complies with Section 5.2 of the Subdivision Regulations?" Subdivision Regulations § 5.2(1) requires that subdivision within the RHOD "shall conform to the subdivision requirements, standards and guidelines of Section 9 of the Stowe Zoning Regulations." Appellant presents no other argument related to this provision or Zoning Regulations § 9 as set forth above. Thus, for the same reasons as set forth above, the Court finds no error with any other aspect of Question 12. Question 12 is answered in the negative.

### Conclusion

For the foregoing reasons, Questions 4, 5, 7 and 10 are **DISMISSED** as not properly being preserved for review in this on-the-record matter. Questions 1 through 3, addressing the applicability of Stowe Club Highlands/Hildebrand are answered in the negative based on the Court's conclusion that the application before the Court was contemplated by the subdivision permit that created the Property. Finally Questions 6, 8, 9, 11 and 12 are all answered in the negative. The Court concludes that there is no factual or legal error in the DRB's decision concluding that the application complies with Zoning Regulations §§ 3.10, 9.5, Standard 4 and Subdivision Regulations §§ 5.1(2) and 5.2. The DRB's decision is **AFFIRMED**.

This concludes the matter before the Court. A Judgment Order accompanies this Decision.

Electronically signed April 15, 2026 pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division

---

respect to Zoning Regulations §§ 3.10 and 9.5, Standard 4, the Court concludes finds no legal or factual error with respect to § 5.1(2).