VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     23-AP-212



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MAY TERM,   2024

Estate of Donald Crofut v. Sean Hammond\*      }     APPEALED FROM:
                                               }     Superior Court, Chittenden Unit,
                                               }     Civil Division
                                               }     CASE NO. 22-CV-01790
                                                     Trial Judge: Helen M. Toor

In the above-entitled cause, the Clerk will enter:

Defendant Sean Hammond appeals from a final judgment order in favor of plaintiff, the Estate of Donald Crofut.  We affirm.

Crofut died in April 2021.  In May 2022, the Estate filed a complaint against Hammond seeking, as relevant here, (1) damages "for a series of thefts perpetrated by [Hammond] upon a vulnerable adult," and (2) a writ of possession for the home where Hammond was living.

During the pendency of this case, the trial court issued a decision in a related case concerning Crofut's will.  See In re Crofut, 2024 VT 8.  In that case, the court invalidated a provision in Crofut's will based on undue influence.  The provision had granted Hammond an option to purchase Crofut's residence for $40,000, well below the home's market value.  We affirmed the trial court's decision on appeal.  See id. ¶ 1.

### I. Proceedings Below

Applying the doctrine of collateral estoppel, the court relied on findings from the related case in reaching its decision here.  Crofut and Hammond met when Hammond was a teenager.  They had a "lifelong relationship in which [Crofut] served as a mentor and friend to [Hammond]."  Id. ¶ 2.  Hammond moved into Crofut's home in 2018.  Crofut was 87 years old at the time; Hammond was 45.  Crofut was diagnosed with cancer and became less able to care for himself over time.  Crofut died in 2021 at the age of 90.  After his death, a neighbor discovered "buckets filled with cash" in Hammond's bedroom as well as "a considerable amount of recently purchased consumer goods," including "sneakers, vacuums, lights, printers, and piles of clothes with store tags still attached."  Id. ¶ 5.  Receipts indicated that Hammond used Crofut's debit card to make these purchases and did so after he learned of Crofut's death.  Hammond also used the debit card to withdraw $400 in cash from Crofut's checking account each day during the final three months of Crofut's life.  Id.  Crofut was unaware of these cash withdrawals and purchases.

Id. The trial court found that Hammond had been "stealing from [Crofut] for months." Id. ¶ 9 (quotation omitted).

Based on these and other findings, the court determined that Hammond stole at least $37,500 from Crofut prior to his death and that, in doing so, he financially exploited a vulnerable adult under 33 V.S.A. § 6952(a). The court further concluded that Hammond's continued possession of Crofut's residence was without right and the Estate was entitled to possession.

In reaching its decision, the court rejected Hammond's assertion that material facts remained in dispute. Hammond argued that there was no evidence that his purchase of personal items with Crofut's debit card was unauthorized. The court found this fact established in its earlier merits decision in the related case. The court agreed with Hammond that the spending analysis proffered by the Estate did not prove the total amount that Hammond stole from Crofut. The only amounts that the court previously made findings on were the $400-per-day cash withdrawals for three months and the $1200 spent at a clothing store on the day that Crofut died, which totaled $37,200. Absent more evidence, the court could not conclude that all of the charges on a spreadsheet submitted by the Estate were unauthorized.

The court found the Estate entitled to restitution of funds stolen from Crofut during his lifetime based on unjust enrichment. Hammond did not contest the Estate's standing to bring such claim or its legal right to restitution on the facts here.

The Estate also argued that it was entitled to statutory restitution under the law protecting vulnerable adults, 33 V.S.A. § 6952. Under that law, a vulnerable adult includes one who is suffering from "infirmities of aging" or "physical . . . disability" that impairs his "ability to provide for his . . . own care without assistance," including health care. Id. § 6902(14)(D). The court explained that Crofut was 90 when he died and had been diagnosed with cancer in 2018. He was hospitalized for months in 2020 and had nurse and hospice care as time passed. The court concluded that Crofut met the statutory definition of a vulnerable adult from at least his hospitalization in January 2020.

Section 6952(a) provides remedies when someone "with reckless disregard or with knowledge" engages in "financial exploitation" of a vulnerable adult. As relevant here, "financial exploitation" means "using . . . funds or property of a vulnerable adult, without or in excess of legal authority, for the wrongful profit or advantage of another" or "acquiring possession or control of or an interest in funds or property of a vulnerable adult through the use of undue influence, harassment, duress, or fraud." Id. § 6951(3)(A), (B). The court found this requirement clearly satisfied based on its determination that Hammond intentionally used Crofut's bank accounts without permission. It thus found that the Estate was entitled to money damages, exemplary damages of up to three times the stolen funds, attorney's fees, injunctive relief, and costs. See id. § 6952(b). The court awarded the Estate the maximum amount of exemplary damages because of Hammond's betrayal of Crofut's trust in him after all Crofut did for him.

The Estate also sought possession of Crofut's residence, where Hammond remained after Crofut's death. Hammond argued that his residency in the house was "in the nature of a tenancy, as he paid rent to Crofut and the Estate." The court found that Hammond had previously paid $300 per month in rent to Crofut. Hammond conceded, however, that his only claim to possession after Crofut's death in April 2021 was pursuant to the provision in Crofut's will for

payment of costs of maintenance and upkeep, not pursuant to the prior rental agreement with Crofut. The court explained that this claim to possession also failed because the provision of the will regarding his option to buy the house (and thus the concomitant provision for his payment of costs until the purchase) was deemed invalid. The court held that the Estate was entitled to regain possession.

The court subsequently issued a final judgment order awarding judgment to the Estate and awarding damages, attorney's fees, and costs, along with a writ of possession for the residence. This appeal followed.

## II. Arguments on Appeal

Hammond argues on appeal that (1) material facts remain in dispute regarding whether he stole from Crofut and whether Crofut was a vulnerable adult, (2) the Estate lacked standing to pursue a cause of action under 33 V.S.A. § 6952(a), and (3) Hammond's status as a tenant was disputed and the court erred in issuing a writ of possession. We address these arguments in turn.

We agree with the trial court that the material facts are undisputed. The court appropriately applied the doctrine of collateral estoppel and relied on the findings in the related case. See In re P.J., 2009 VT 5, ¶ 8, 185 Vt. 606 (mem.) (identifying elements of collateral estoppel). "Collateral estoppel applies to issues of both fact and law." Mellin v. Flood Brook Union Sch. Dist., 173 Vt. 202, 209 (2001). The facts establish that Hammond's use of Crofut's debit card to purchase personal items and withdraw cash was unauthorized and that the unauthorized use totaled at least $37,200. Hammond cannot challenge the evidentiary basis for these findings at this stage. That issue was previously litigated and the findings are now final. See In re P.J., 2009 VT 5, ¶ 8 (explaining that "purpose of collateral estoppel is to conserve the resources of courts and litigants by protecting them against repetitive litigation, to promote the finality of judgments, to encourage reliance on judicial decisions, and to decrease the chances of inconsistent adjudication").[*]

The undisputed facts also establish that Crofut was elderly, hospitalized for periods of time, and increasingly unable to care for himself, and in turn establish, as a matter of law, that Crofut was a "vulnerable adult" as defined in 33 V.S.A. § 6902(14)(D).

_____

[*] Hammond also asserts that the court erred in invoking collateral estoppel because, at the time, the companion case was on appeal. That case has been finally resolved, and this argument is therefore moot.

Hammond does not show that he preserved his assertion that applying the doctrine of collateral estoppel was unfair, and, further, his one-sentence argument is inadequately briefed. See In re S.B.L., 150 Vt. 294, 297 (1988) (explaining that appellant bears burden of demonstrating how trial court erred warranting reversal, and this Court will not comb record searching for error); see also V.R.A.P. 28(a)(4) (stating appellant's brief should explain what issues are, how they were preserved, and what appellant's contentions are on appeal, with citations to authorities, statutes, and parts of record relied upon). Even if this argument was preserved, we would reject it. Hammond offers no persuasive argument why he should be allowed to relitigate whether his use of Crofut's debit card was unauthorized.

Turning to Hammond's second argument, Hammond did not argue in his opposition to summary judgment that the Estate lacked authority to pursue relief on Crofut's behalf under 33 V.S.A. § 6952(a). Instead, he raised the argument for the first time in a motion for judgment on the pleadings, filed two months after the Estate's motion for summary judgment was filed and a month after his opposition to summary judgment was filed. The Estate opposed the motion as both untimely and without merit. The court ruled that the motion for judgment on the pleadings was not yet ripe given the pending motion for summary judgment. Following its summary-judgment ruling, the court denied the motion for judgment on the pleadings. It reiterated that the motion was not ripe until the court decided the summary-judgment motion. It found the motion untimely and explained that the standing argument should have been raised in opposition to the Estate's motion for summary judgment. The court considered the issue raised in the motion moot as it had granted summary judgment and addressed the claim for restitution under the "vulnerable adult" statute. In any case, the court continued, it was persuaded that the Estate's arguments in opposition to the motion were correct.

We reach the same conclusion here. This argument was not properly raised in opposition to summary judgment. See Denton v. Chittenden Bank, 163 Vt. 62, 69 (1994) ("Failure to raise a legal or factual reason why summary judgment should not be granted before the trial court precludes raising such a reason on appeal."). It also fails on the merits. In asserting that the Estate lacks standing, Hammond fails to address Vermont's Survival Statute, 14 V.S.A. § 1451, which provides that "[a]ctions . . . on tort on account of the wrongful conversion of personal estate or for damages done to . . . personal estate shall survive, in addition to the actions that survive by common law, and may be commenced and prosecuted by the executor or administrator." We agree with the Estate that an action seeking restitution for thefts that Hammond perpetrated against Crofut's "personal estate" survives Crofut's death. See Estate of Kuhling by Kuhling v. Glaze, 2018 VT 75, ¶ 15, 208 Vt. 273 ("We read the language [of 14 V.S.A. § 1451] allowing tort claims for damage to the 'personal estate' to include allegations of breach of fiduciary duty that would have resulted in a decrease in Estate assets.").

As to Hammond's final argument, the record indicates that the Estate sought an order of ejectment and a writ of possession in its first amended complaint. It alleged that Hammond had been in sole possession of Crofut's residence since Crofut's death in April 2021. Hammond's occupancy of the residence was based on his belief that he had a valid, testamentary right to purchase the residence from the Estate under the terms of Crofut's will. The probate division invalided this portion of the will in May 2022 after finding that Hammond stole from Crofut. Following this decision, the Estate again demanded that Hammond vacate the residence, which Hammond refused to do. When the superior court affirmed the probate ruling, the Estate demanded that Hammond leave for a third time, without success. The Estate alleged that Hammond's continued occupancy of the residence was unlawful and without right and that it was entitled to possession.

The trial court found, and Hammond conceded, that Hammond's only claim to possession after Crofut's death was pursuant to the provision in Crofut's will for payment of costs of maintenance and upkeep, not pursuant to the prior rental agreement with Crofut. The provision in the will on which Hammond relied had been invalidated. The court thus found as a matter of law that the Estate was entitled to regain possession of the home.

4

While Hammond argues in his brief that he should be considered a tenant and be given the process afforded tenants, he asserted below in an April 2022 filing that he was <u>not</u> a tenant and that he was not obligated to pay rent to remain in the home. The court did not err in finding that Hammond conceded that his only claim to possession was by virtue of the provision in Crofut's will, which was thereafter invalidated. Having no right to continued occupancy of the premises, the court did not err in granting possession to the Estate pursuant to its common law ejectment claim. See <u>Kellogg v. Shushereba</u>, 2013 VT 76, ¶ 23, 194 Vt. 446, (explaining that in absence of landlord-tenant agreement, eviction action was "more properly viewed as a common law action for ejectment governed by 12 V.S.A. § 4761, with such 'damages' as would be due under 12 V.S.A. § 4765"); see also 12 V.S.A. § 4761 ("A person having claim to the seisin or possession of lands, tenements, or hereditaments shall have an action of ejectment, according to the nature of the case . . . .").

<u>Affirmed</u>.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice


_____
Karen R. Carroll, Associate Justice


_____
William D. Cohen, Associate Justice